Grant **ADAMI** and Grant Adami, Jr., Appellants,

v.

Vivian Mary Gilliland **DOBIE**, a feme sole, et al., Appellees.

No. 14699.

Court of Civil Appeals of Texas.

San Antonio.

March 26, 1969.

Rehearing Denied May 7, 1969.

Lloyd, Lloyd, Dean & Ellzey, Alice, for appellants.

Wiliam C. Wright, Tom H. Goodwin, John E. Fitzgibbon, Laredo, for appellees.

CADENA, Justice.

Defendants, Grant Adami and Grant Adami, Jr., appeal from an order of the District Court of Webb County overruling their plea of privilege to be sued in Duval County, the county of their residence. We reverse.

The suit was instituted by plaintiff Vivian Mary Gilliland Dobie, for herself and her minor children, to recover damages for the wrongful death of her husband, William A. Dobie, Jr. It is undisputed that the deceased was shot to death in Webb County by Kenneth Adami, son of Grant Adami and brother of Grant Adami, Jr. As a result of the shooting, Kenneth Adami was convicted of murder without malice.

Plaintiffs seek to maintain venue in Webb County under subdivisions 9, 9a and 29a of Article 1995, Vernon's Ann.Civ.St.[1]

---

1. The subdivisions of the venue statute relied on by plaintiffs are as follows:

"9. Crime or trespass.—A suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed by the defendant, or by his agent or representative, * * *. This subdivision shall not apply to any suit based upon negligence per se, negligence at common law or any form of negligence, active or passive.

"9a. Negligence.—A suit based upon negligence per se, * * * or any form

We consider first the applicability of subdivision 9.

Under subdivision 9, in order to maintain venue in Webb County, it was incumbent on plaintiffs to establish by a preponderance of the evidence that a crime, offense or trespass was committed in Webb County by defendants or by their agent or representative. The subdivision is not applicable where plaintiff's suit is based on any form of negligence.

Since the evidence establishes that the cause of action here is based on a crime committed in Webb County by Kenneth Adami, son of Grant Adami and brother of Grant Adami, Jr., we need determine only whether the evidence supports the finding that, in killing deceased, Kenneth Adami was acting as the "agent or representative" of defendants.

The evidence discloses that Grant Adami was the owner of a ranch in Webb County, where he was engaged in the cattle business. In 1945 he retired from the cattle business and divided his cattle among his three sons, including Kenneth and Grant, Jr., giving them permission to pasture the land on the ranch, known as the Adami Ranch. All three sons pastured cattle on the ranch, but only Kenneth lived there. There is nothing in the record to indicate that the three sons were partners, or that they shared profits or expenses.

Apparently, until 1959, each of the brothers took care of his own cattle. In that year Kenneth's health began to fail and, because of his inability to ride and do many of the things required of one in the ranching business, he sold all of his cattle except about twenty head. Grant, Jr., and Kenneth agreed that the former would take care of Kenneth's cattle, with Kenneth doing whatever he could around the ranch to help. Kenneth continued to live on the ranch, doing such work as he was able to perform, including the repair of fences and the closing of gates which he found open. All three brothers would repair fences and all members of the family, including Grant, Sr., whenever they found a gate open, would close it.

The deceased lived on a ranch adjacent to the Adami Ranch. On the day of the fatal shooting, deceased drove through a fenced lane on the Adami Ranch, on the way to his own ranch. The lane had several gates, including one in the fence which formed the boundary between the two ranches. Kenneth, from his position atop an oil tank, saw deceased driving down the lane in a pick-up truck, and noticed that deceased left a gate open. After closing the gate, Kenneth, rifle in hand, proceeded to the house of deceased, about two miles away, where he saw deceased seated in the pick-up truck. Kenneth stood in front of the truck and took down the license number. He testified that he took down the license number for the purpose of "identifying this person who had committed depredation that was a menace to my livelihood" so that he could "try to prosecute" such person. When asked if he intended to report the license number to Grant, Jr., Kenneth answered, "I intended to enlist the aid and financial support of my brothers and my father to

---

of negligence, active or passive, may be brought in the county where the act or omission of negligence occurred * * *. The venue facts for plaintiff to establish by the preponderance of the evidence to sustain venue in a county other than the county of defendant's residence are:

1. That an act or omission of negligence occurred in the county where suit was filed.

2. That such act or omission was that of the defendant, in person, or that of his servant, agent or representative acting within the scope of his employment.

3. That such negligence was a proximate cause of plaintiff's injuries."

"29a. Two or more defendants.— Whenever there are two or more defendants in any suit brought in any county in this State and such suit is lawfully maintainable therein under the provisions of Article 1995 as to any of such defendants, then such suit may be maintained in such county against any and all necessary parties thereto."

get a conviction because I knew that I wasn't capable on my own."

After some conversation with the deceased, Kenneth walked to the side of the pick-up and fired the fatal shot. The record does not disclose the nature of the conversation between Kenneth and deceased.

■ The only testimony in the record tending to show that Kenneth was the "agent or representative" of the defendants is in the form of evidence given by Grant Adami, Jr., while testifying during Kenneth's prior trial for murder.[2] At such trial, Grant, Jr., stated that, since Kenneth was staying at the ranch, he was "authorized" by Grant, Jr., "to look after the land," and that part of Kenneth's "duty" was "to see about the gates being closed."

■ The probative force of such testimony, as tending to establish that Kenneth occupied the status of agent or representative, is, at best, questionable. In common parlance, "authorize" is often used in the sense of granting permission. If A grants B permission to walk across A's land, B is "authorized" to do so, but the use of "authorized" here certainly does not mean that B has the power to affect the legal relations of A to third persons by acts done by B in accordance with the permission granted by A. Nor is the testimony concerning Kenneth's "duty" to "see about the gates being closed" particularly persuasive. The relationship of principal-agent, or master-servant, is but one of the many relationships viewed by the law as giving rise to duties. Assuming that the lay witness used the term "duty" in its legal sense, there is no testimony which even tends to indicate that the duty arose out of the relationship contemplated by subdivision 9.[3]

■ But, even if we assume that Kenneth occupied the status of a "hired hand"[4] viz-a-viz Grant, Jr., there is no basis for imposing liability on Grant, Jr., for the act of Kenneth in killing deceased. While it is true that a master may be liable for a wilful wrong committed by his servant, such liability attaches only when the servant, in the commission of such wilful

2. Defendants complain of the admission of such evidence, arguing that the requirements for the admission of such prior testimony as a declaration against interest were not satisfied. The rules relating to statements or declarations against interest are applicable only where the statement or declaration is that of a person not a party to the suit. Where the evidence consists of a statement of a party to the suit, such prior statement is admissible against such party as an admission. In view of this disposition we make of this case, we do not discuss the question of the admissibility of such evidence against Grant Adami, other than to note that it was admissible as against Grant Adami, Jr., and that no effort was made to limit the purpose for which it was admitted.

3. Defendants point out that subdivision 9 deals with vicarious liability for crimes, offenses or trespasses committed by the "agent or representative" of the defendant, while subdivision 9a relates to vicarious liability for the negligence of the "servant, agent or representative" of the defendant. Defendants contend that, at most, the evidence in this case indicates that Kenneth was the "servant" of one or both of defendants, rather than an "agent or representative" of either. Relying on the distinction, sometimes applied, between "servant" and "agent," 2 Tex.Jur.2d, Agency, § 4, p. 439, defendants argue that proof of a crime committed by the "servant" of defendants is insufficient to sustain venue under subdivision 9. See Texas Power & Light Co. v. Adamson, 203 S.W.2d 275, 276 (Tex. Civ.App.—Texarkana 1947, no writ), concerning the meaning of the term "agent or representative" as used in subdivision 23 of the venue statute. We do not, in this opinion, decide the question of whether or not the phrase "agent or representative," as used in subdivision 9, includes a "servant."

4. The term "hired hand," "employment" and "employed" are used rather loosely, since there is no evidence that Kenneth received any compensation from either of the defendants.

wrong, was acting within the scope of his employment for the benefit of the master. 2 Tex.Jur.2d, Agency, § 199, p. 650. A master is not liable for unauthorized intended tortious conduct of his servant, even when the act was done in connection with the servant's employment, where the wrongful act was unexpectable, in view of the duties of the servant. Restatement 2d, Agency, § 245. See Genovese v. Butt, 48 S.W.2d 587 (Tex.Com.App., 1932). The commission of a deadly assault is not a customary way of performing a duty which involves seeing "about the gates being closed."

■ In this case, the act of the servant was performed some two miles from the place where it was his duty to see that gates were closed; the use of force was not expectable by the master; the act of following people for the purpose of taking down license numbers was not an act of the kind Kenneth was employed to perform; the testimony shows that Kenneth was acting out of purely personal motives, since he stated that his purpose in seeking to obtain the license number was to prosecute the person who "had committed depredation that was a menace" to Kenneth's livelihood; and the act was of a serious criminal nature. Under these circumstances, it cannot be said that Kenneth's conduct was of the same general nature as that authorized, or incidental to the conduct authorized. See Restatement 2d, Agency, §§ 228, 229.

There is testimony that Kenneth made efforts to keep trespassers off the ranch, but there is no testimony that it was his duty to either defendant to eject trespassers. Since he lived on the ranch and kept his cattle there, it is not surprising that he was not overly hospitable to tres-

passers. In addition, there is no testimony indicating that deceased was a trespasser. The evidence shows that deceased owned land on both sides of the Adami Ranch and had used the lane in question with the knowledge of the Adamis, in the past.[5]

■ Plaintiffs' attempt to sustain venue in Webb County under subdivision 9a, the "negligence" exception, is based on the theory that defendants employed Kenneth with knowledge that he was a violent and dangerous man. Both defendants, while denying any personal knowledge of the incident, testified that they had heard that Kenneth had once shot a trespasser in the hand. This incident, if it did occur, took place on another ranch more than twenty years prior to the killing which gave rise to this litigation. Assuming that the incident in fact occurred (there is no evidence that the stories were true), and that it was not too remote in time, the skimpy evidence furnishes no basis for the inference that defendants knew that Kenneth was a violent and dangerous man. The evidence does not disclose the circumstances surrounding the alleged shooting.

We see no reason for discussing subdivision 29a, which authorizes a plaintiff who sues two or more defendants in a county where venue is proper as to one defendant under some exception prescribed by the venue statute to maintain venue therein against all necessary parties to the cause of action. Since plaintiffs failed to prove, against either defendant, a cause of action maintainable in Webb County under any of the exceptions, there is no basis for the application of subdivision 29a.

---

5. There is evidence to the effect that on at least one prior occasion the deceased had left a gate open on the Adami Ranch. Kenneth reported this fact to Grant, Jr., and requested that Grant, Jr., "speak to the law" about it. Grant, Jr., replied that Kenneth's suggestion "wasn't the right thing to do," since "the families had been neighbors for so long and friendly that it might cause ill-feeling * * *." Grant, Jr., merely went to deceased and "spoke to him about it."

The judgment of the trial court is reversed and the cause is remanded with instructions to transfer the case to Duval County.