ANA, INC. d/b/a A–Mart, Appellant,

v.

Dorothy LOWRY, Appellee.

No. 01–98–01097–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 26, 2000.

---

**2.** "Heat runs" is a term used to describe a driver's efforts to determine whether or not he is under surveillance.

Percy L. Isgitt, Houston, for appellant.

Rodney Merwin, Houston, for appellee.

Panel consists of Justices MIRABAL, TAFT, and DUGGAN.*

## OPINION

LEE DUGGAN, Jr., Justice (Assigned).

### I.

### PROCEDURAL HISTORY

This is an appeal by a convenience store owner from a judgment entered on a jury verdict finding the owner liable under *respondeat superior* for its employee's alleged assault upon a customer. Appellant, ANA, Inc., argues, *inter alia*, that it is not

---

\* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

liable for its employee's alleged actions because that employee was not acting within the scope of his authority and was not ANA's vice principal. We reverse and remand.

## II.

## BACKGROUND

ANA, which does business as A–Mart, owns and operates a convenience store. Appellee, Dorothy Lowry, testified that on August 16, 1995, she went into A–Mart to buy a jar of mayonnaise. She commented to the employee behind the counter, Yun Byeyong, that the prices were too high. Byeyong became verbally abusive toward her, reached toward her over the counter, and then ran around the counter and reached for her. Lowry testified that, in her attempt to evade him, she ran into a potato chip rack and a burglar bar next to the front door, felt his hand on her back or shoulder, and fell on the ground outside the store. Finally, she testified that Byeyong followed her outside and kicked her car door. ANA provided no evidence at trial, and its substantive interrogatory responses regarding its version of events on August 16 were not presented to the jury. Because Lowry was the only person to testify at trial, her version of events was all the jury had to consider.[1]

Lowry sued ANA, alleging personal injuries resulting from Byeyong's assault and battery, negligence, malice, and gross negligence. A jury found that: (1) Byeyong assaulted Lowry; (2) Byeyong proximately caused Lowry's injuries through negligence; (3) Byeyong was acting within the scope of his employment when the incident occurred; (4) the injuries Byeyong inflicted rose to the level of gross negligence; (5) Byeyong was a vice princi-

pal for ANA; and (6) ANA was liable for Lowry's actual and exemplary damages.

On appeal, ANA asserts in five points of error that: (1) the jury's finding that ANA was liable for Byeyong's actions was "improper"; (2) there is no evidence that Byeyong was acting within the scope of his employment; (3) there is insufficient evidence that Byeyong assaulted Lowry; (4) there is no evidence or insufficient evidence that Byeyong was ANA's vice principal; and (5) there is insufficient evidence to support the jury's award of exemplary damages.

## III.

## DISCUSSION

### A. Whether Byeyong acted within the scope of his employment

ANA combines consideration of its first two points of error into a single section of its brief. The first point of error asserts that the jury "improperly" found ANA liable for Byeyong's allegedly tortious actions because Byeyong was not acting within the scope of his employment. ANA's second point of error argues there was no evidence that Byeyong acted within the scope of his employment when he allegedly assaulted Lowry. The text of the discussion, however, addresses the "no evidence" argument without explaining how, independent of the "no evidence" argument, the jury's finding of liability was "improper." We will consider the two points of error together as one "no evidence" complaint.

■ When considering a "no evidence" challenge, we review all evidence in the light most favorable to the prevailing party, indulging every reasonable inference in its favor. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86

---

1. ANA attempted to introduce the testimony of a last minute witness, Gerald Bernard Campbell, who allegedly witnessed a different version of events. After a *voir dire* of Campbell outside the presence of the jury, however, the trial court excluded Campbell as a witness because he was not listed as a witness 30 or more days before trial and ANA's attorney did not show good cause for listing him late. The court also excluded Byeyong and a police officer as witnesses for the same reason. Thus, the only person's testimony to reach the jury was Lowry's. ANA does not challenge these evidentiary rulings in its appeal.

(Tex.1998). If there is any evidence of probative force to support the fact finder's findings, *i.e.*, more than a mere scintilla, we overrule the point. *Vannerson v. Vannerson*, 857 S.W.2d 659, 666 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

■ When an employee assaults a third party, the trier of fact must "determine whether the employee ceased to act as an employee and acted instead upon his own responsibility." *Durand v. Moore*, 879 S.W.2d 196, 199 (Tex.App.—Houston [14th Dist.] 1994, no writ) (citing *Houston Transit Co. v. Felder*, 146 Tex. 428, 208 S.W.2d 880, 882 (1948)). In *Texas & Pacific Railway v. Hagenloh*, the Texas Supreme Court delineated the limits of an employer's responsibility for an employee's assault on a third party. 151 Tex. 191, 247 S.W.2d 236, 239–41 (1952). *Hagenloh* noted that an employer is ordinarily not liable for an employee's assault:

It is not ordinarily within the scope of a servant's authority to commit an assault on a third person.... And the cases in which liability has been imposed upon the master for assault by his servant are comparatively few. Usually assault is the expression of personal animosity and is not for the purpose of carrying out the master's business.

. . . .

... [W]hen the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone.

*Id.* at 239, 241 (quotations and citations omitted).

■ *Hagenloh* also explained, however, that an assault could fall within the employee's scope of employment when the employee's duty necessitates the use of force in certain situations:

The nature of the employment may be such as necessarily to involve at times the use of force as where the employee's duty is to guard the employer's property and to protect it from trespassers so that the act of using force may be in furtherance of the employer's business, making him liable even when greater force is used than is necessary.

*Id.* at 239.

Several more recent decisions have further elaborated on the limits of the scope of employment for an assault. In *Viking v. Circle K Convenience Stores, Inc.*, this Court considered a convenience store employee who, upon hearing that the plaintiff had scratched the paint on the employee's car, left the store, retrieved a pistol, and fired at the plaintiff, who was approximately one-half block away. 742 S.W.2d 732, 733–34 (Tex.App.—Houston [1st Dist.] 1987, writ denied). The plaintiff, who was struck in the leg, sued the convenience store owner. We held that the employee's "conduct in pursuing the [plaintiff] into the street and shooting him for scratching [the employee's] car cannot reasonably be construed as obeying [the employer's] instructions or as arising from his employment." *Id.* at 734.

Similarly, in *Kendall v. Whataburger, Inc.*, we found that a fast food employee's conduct, in throwing a greasy, hot, french fry basket on the plaintiff, "could not possibly have been so connected with and immediately arising out of his job of taking food orders, and preparing and delivering food orders to customers, that his authorized employment tasks and the assault could have merged into one indivisible tort, imputable to the [employer]." 759 S.W.2d 751, 755 (Tex.App.—Houston [1st Dist.] 1988, no writ).

In both of these decisions, the employees' actions were entirely unrelated to their respective duties. Other decisions, however, have imputed liability to the employer when the employee's actions were more closely related to business responsibilities. In *Frito-Lay, Inc. v. Ramos*, for example, a snack company employee en-

gaged in an altercation with a store owner, shoving and injuring him, as he attempted to remove his company's merchandise rack from the store. 770 S.W.2d 887, 888 (Tex. App.—El Paso 1989), *rev'd on other grounds*, 784 S.W.2d 667 (Tex.1990). The El Paso court determined that the jury's finding that the employee was acting within the course and scope of his employment was not against the great weight and preponderance of the evidence; the altercation involved the employee's "right to certain personal property" and his conclusion that, "as a company employee, he was obligated to remove all company equipment." *Id.* at 889.

In *Durand v. Moore*, a night club doorman had responsibilities including "checking IDs, enforcing the dress code, and coordinating the admission of customers into the club." 879 S.W.2d 196, 198 (Tex. App.—Houston [14th Dist.] 1994, no writ). The doorman assaulted two people standing in line, but the appellate court found there was evidence showing that the employee's "assault of [the customers] was overzealous enforcement of the criteria and procedures used to select waiting customers for admittance into the club." *Id.* at 198–99. In particular, *Durand* noted that "there was evidence that [the doorman] had the responsibility to control the admittance of customers into the club" and that the altercation arose from the doorman's preferential treatment of certain customers. *Id.* at 200. The court determined this evidence that the doorman acted within the course and scope of his employment was sufficient to overrule the night club owner's no evidence and factual insufficiency arguments. *Id.* at 200–202.

As these cases indicate, an employer will be held liable for its employee's assault on a third party only if that assault stems directly from the employee's exercise (however inappropriate or excessive) of a delegated right or duty. Thus, our case turns on whether Byeyong's alleged actions were an overzealous misuse of his authority as an employee or were utterly unrelated to his duties.

Here, there was no testimony from Byeyong or anyone from ANA regarding Byeyong's duties or responsibilities at the A–Mart. Lowry testified that Byeyong was alone in the store when the altercation occurred and appeared to be "managing the entire facility," but she also stated she had never met him before the day of the altercation. She did not testify to any personal knowledge of his responsibilities for the A–Mart. Thus, other than Byeyong's sole presence at the A–Mart when the incident occurred, there was no evidence of his responsibilities as ANA's employee.[2]

Our case is unlike *Frito–Lay*, in which the employee's testimony established he was exercising control over company property when he got into the altercation with the store owner over that property, or *Durand*, in which evidence showed the doorman was in charge of admitting customers into the night club. Our case shows that Byeyong grew enraged with Lowry and chased her out of the store, but there is no evidence of Byeyong's duties or of whether Byeyong was exercising, however inappropriately, a duty as an employee when this occurred.

The record is silent as to whether Byeyong had the right or duty to evict custom-

2. In response to an interrogatory, ANA listed the following responsibilities of the manager of the convenience store: "Manager; work cash register, daily sales reports, grocery orders and other inventory orders, set employees' duties, handle customer and employee complaints and problems." Byeyong was listed in another interrogatory response as a "clerk," with no duties described after his title. ANA's counsel offered these particular responses to the jury without objection from opposing counsel. Nevertheless, a party's own interrogatory responses may not be used in its favor in a no evidence challenge, even when opposing counsel fails to object. *See* TEX.R.CIV.P. 197.3; *Garcia v. National Eligibility Express, Inc.*, 4 S.W.3d 887, 890–91 (Tex.App.—Houston [1st Dist.] 1999, no pet.). Thus, we cannot consider these responses in addressing ANA's no evidence argument.

ers, or to take any of his alleged actions toward Lowry.

We find there was no evidence that Byeyong was acting within the course and scope of his authority when he allegedly assaulted Lowry.

We sustain ANA's first and second points of error.

## B. Whether there was no evidence or insufficient evidence that Byeyong was ANA's vice principal

 In its fourth point of error, ANA argues there was no evidence or insufficient evidence that Byeyong was its vice principal, the only remaining basis for imputing liability to ANA. Regardless of whether an employee acts within the scope of his employment, his status as a vice principal of the company will impute liability to his employer for his actions in the workplace. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex.1999). Here, as an alternate ground for imposing liability, the jury found that Byeyong was a vice principal of ANA.

 Vice principals represent their corporation in its corporate capacity, and include persons with the "authority to employ, direct, and discharge servants of the master, and those to whom a master has confided the management of the whole or a department or division of his business." *Id.* ANA asserts that the record does not reflect whether Byeyong had the authority to hire, fire, or direct other employees, or whether he was entrusted with the management of ANA or any of its divisions.

 Lowry referred to Byeyong several times as a manager without objection from ANA's counsel. Nevertheless, her testimony was equivocal and indicated she did not have personal knowledge of Byeyong's actual job title or responsibilities—"I guess [Byeyong] was the attendant of the

store, the manager, I guess." Lowry stated under cross-examination that she had assumed Byeyong was the owner of the A–Mart but could have been mistaken about that assertion. She also conceded that she had never seen Byeyong before she walked into the A–Mart on the day of the altercation. Other than these statements, which indicated that Lowry did not actually know what Byeyong's job position was with ANA, the only evidence offered of his position was Lowry's testimony that Byeyong was the only employee in the convenience store at the time of the alleged events.[3]

In *Hammerly Oaks, Inc. v. Edwards*, an injured resident of an apartment complex argued that a particular leasing agent was a vice principal of the complex based on the fact that the leasing agent was alone in the complex's leasing office. 958 S.W.2d 387, 392 (Tex.1997). The Texas Supreme Court rejected this argument, noting that "[t]he fact that [the leasing agent] was alone in the office . . . falls far short of a showing that [she] had the authority to hire and fire employees or that she presided over the management of a department of Hammerly Oaks." *Id.*

Like *Hammerly Oaks*, we conclude the mere fact that Byeyong was alone in the convenience store is not enough to show he was entrusted with the authority to hire or fire other employees or to preside over the management of a department or division of ANA. We find there was no evidence that Byeyong was ANA's vice principal.

We sustain ANA's fourth point of error.

Because ANA's first, second, and fourth points of error are dispositive, we do not consider ANA's remaining points of error challenging the sufficiency of the evidence that Byeyong assaulted Lowry and the sufficiency of the evidence supporting the jury's award of exemplary damages.

---

3. As discussed in the previous footnote, ANA also offered to the jury interrogatory responses listing Byeyong as a clerk and another employee as the manager of the A–Mart. Although opposing counsel failed to object to

these responses, we cannot consider them in performing this no evidence review. *See* TEX.R.CIV.P. 197.3; *Garcia*, 4 S.W.3d at 890–91.

When reversing the judgment of a trial court, we are restricted to "render[ing] such judgment or decree as the court below should have rendered...." TEX.R.APP.P. 81(c). When, as here, the appellant in a jury trial raises a "no evidence" challenge for the first time in a motion for new trial, without objecting to jury submissions or without moving for directed verdict, for judgment notwithstanding the verdict, or to disregard jury findings, the only predicate laid by the appellant is for the granting of a new trial. *See Horrocks v. Texas Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex.1993). Therefore, we may sustain the "no evidence" point, but must remand for a new trial rather than render judgment. *Id.*

We reverse the trial court's judgment and remand to the trial court for further proceedings in accordance with this opinion.