**Maria MILLAN, Individually and as Trustee for James E. Millan, Appellant,**

v.

**DEAN WITTER REYNOLDS, INC., Appellee.**

No. 04–00–00608–CV.

Court of Appeals of Texas, San Antonio.

July 17, 2002.

Rehearing En Banc Overruled Sept. 4, 2002.

Joel H. Pullen, Shari P. Pulman, Law Offices of Joel H. Pullen, San Antonio; Peter M. Kelly, Kelly, Jeremiah & Feder, L.L.P., Houston, for Appellant.

David D. Sterling, Stephen G. Tipps, Amy Douthitt Maddux, Baker Botts, L.L.P., Houston; Paul M. Green, Green & Dubois, P.C., San Antonio, for Appellee.

Sitting en banc: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, and SANDEE BRYAN MARION, Justice.

## OPINION ON APPELLEE'S MOTION FOR REHEARING EN BANC

Opinion by KAREN ANGELINI, Justice.

We grant Dean Witter Reynolds, Inc.'s motion for rehearing en banc, withdraw our opinion and judgment issued November 30, 2001, and issue this revised opinion and judgment.

### FACTUAL & PROCEDURAL BACKGROUND

Maria Millan opened two brokerage accounts at Dean Witter—one for herself and the other as trustee for her son, James—using her other son Miguel as her broker. Her investment practice was to purchase municipal bonds, hold them until they matured, then reinvest the proceeds. Over the next three years, Miguel systematically looted his mother's account, ultimately stealing from her more than $287,000. He managed to do this by opening an additional account in his mother's name and forging her signature on the application. This account had check-writing privileges and a credit card attached to it that Miguel used liberally. He took his mother's periodic deposits, usually consisting of several thousand dollars, deposited the money into this fictitious account, and wrote himself checks from the account, usually made out to "cash." Miguel covered his tracks by opening a post office box, filing a false change of address form on which he forged his mother's signature, and creating false account statements purporting to be from Dean Witter.

Millan sued her son and Dean Witter for conversion, fraud, breach of fiduciary duty, unauthorized transactions, negligence, and gross negligence. In its amended response, Dean Witter asserted limitations and invoked the proportionate responsibility section of the Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon 1997). The trial court directed a verdict for Dean Witter on the issues of vicarious liability, breach of fiduciary duty, and exemplary damages and refused various liability and damages issues requested by Millan. The jury was asked to determine the relative direct negligence of Millan and Dean Witter. It found Millan 85% negligent and Dean Witter 15% negligent and determined Millan's damages to be $11,433.39. The jury further found Millan should have discovered the fraud in July 1994.

The trial court denied Millan's motion for judgment notwithstanding the verdict (JNOV) and to disregard the jury findings, rendered a take-nothing judgment, and denied the motion for new trial. In twelve issues on appeal, Millan contends the trial court erred in rendering the directed verdict, refusing her jury questions, denying her motion for JNOV, and denying her motion for new trial. She also challenges the legal and factual sufficiency of the evidence supporting the jury's findings on negligence and concerning when she should have discovered the fraud.

### LIMITATIONS

Limitations is the threshold issue. In issue seven, Millan challenges the suffi-

ciency of the evidence to support the jury's finding that she should have discovered irregularities in her Dean Witter account by "July 1994." Similarly, in issue nine, Millan claims the trial court improperly reduced the limitations period from four to two years when it rendered a directed verdict on her breach of fiduciary duty and fraud claims. Dean Witter contends all of Millan's claims are time barred.

■■■ Negligence, gross negligence, and conversion are governed by a two-year statute of limitations. *See* TEX. CIV. REM. & PRAC.CODE ANN. § 16.003(a) (Vernon Supp. 2002). A cause of action for conversion accrues at the time facts come into existence that authorize a claimant to seek a judicial remedy. *See Risinger v. Wilson County*, 961 S.W.2d 525, 527 (Tex.App.-San Antonio 1997, pet. denied). Although Millan cites *Perez v. Gulley*, 829 S.W.2d 388, 390 (Tex.App.-Corpus Christi 1992, writ denied) to argue breach of fiduciary duty has a four-year limitations period, this court previously held it has a two-year limitations period. *See Farias v. Laredo Nat'l Bank*, 955 S.W.2d 328, 334 (Tex. App.-San Antonio 1997, pet. denied).[1] Finally, fraud is governed by a four-year statute of limitations. *See* TEX. CIV. REM. & PRAC.CODE ANN. § 16.004 (Vernon Supp. 2002).

■■■ The discovery rule doctrine provides that an action does not accrue until a plaintiff knew or in the exercise of reasonable diligence should have known of a wrongful act and resulting injury. *Farias*, 955 S.W.2d at 334. In response to jury

question three, the jury found Millan should have discovered the irregularities in her Dean Witter accounts in July 1994. Millan filed suit June 3, 1998. Assuming the evidence was sufficient to support the jury's answer to question three, limitations bars recovery for Millan's claims of negligence, gross negligence, conversion, and breach of fiduciary duty.[2] It does not, however, bar recovery for fraud, because Millan filed suit before limitations had run on this cause of action.

## SUFFICIENCY OF THE EVIDENCE

Millan contends in issue seven that the evidence was not legally or factually sufficient to support the jury's finding that she should have discovered something was amiss with her account by July 1994, thus the trial court erred in overruling her motion for JNOV. In issue five, she contends the evidence was legally and factually insufficient to sustain the jury's finding that she was 85% negligent. We address these sufficiency points together.

■■■ In assessing whether the evidence supporting a jury finding is legally sufficient, we only consider evidence favorable to the jury's decision and disregard all evidence and inferences to the contrary. *See Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Thrift v. Hubbard*, 974 S.W.2d 70, 77 (Tex.App.-San Antonio 1998, pet. denied). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Thrift*, 974 S.W.2d at 77. In considering a challenge to the evidence's factual suffi-

1. In 1999, the Legislature specified a four-year limitations period for breach of fiduciary duty, largely because of the split among the courts of appeal in determining whether limitations was two or four years. However, the statute is inapplicable here because the cause of action accrued before passage of the provision.

2. Although the issues of conversion and breach of fiduciary duty were not submitted to the jury, its answer to question three would still apply to bar these claims. *See Houston Terminal Land Co. v. Westergreen*, 119 Tex. 204, 27 S.W.2d 526, 527 (1930) (determination of fact issue creates estoppel by judgment on same issue).

ciency, we review all of the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence that it is manifestly unjust. *See* *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Thrift*, 974 S.W.2d at 77.

The evidence and testimony in the record reflects the following acts, omissions, and chronology of events:

July 7, 1993 Millan and her sister opened brokerage accounts at Dean Witter; Millan selected her son as her broker, despite knowing Miguel was in debt and had difficulty managing his own finances; Millan had her statements mailed to her sister's home. Over time, her sister noticed irregularities in Millan's account and brought that to Millan's attention, but Millan did not act on this information. Over the next three years, Dean Witter violated its own policy of reviewing employee-related accounts on a monthly basis.

January 1994 Miguel forged his mother's signature and opened a different type of account for her in both their names, an "Active Assets Account" with check-writing privileges. Dean Witter did not verify Millan's signature, as its policy required, when the bogus account was opened. Millan began receiving statements at her home address, which Miguel apparently stole from her mailbox. Miguel gave Millan a checkbook for her use, with checks that began with number 502. It is not clear from the record whether he mailed the checkbook or brought it to her personally. Millan accepted her son's word that her account suddenly had check-writing privileges and did not call Dean Witter to verify this. Some of the checks Millan wrote over the next three years to deposit money into her account showed a different account number on the back where each was endorsed payable to Dean Witter. Millan did not notice this. Miguel deposited the money into the joint account he had opened by forging his mother's signature.

June 11, 1994 Miguel forged check 506 that he pilfered from Millan's checkbook; it is made payable to "cash" in the amount of $35,000. It is unclear from the record whether he stole the check before giving the checkbook to Millan, or stole it from her home. Disregarding written policy, a Dean Witter supervisor did not verify the check, despite the high amount, the payment to "cash," and the concerns of the employee who first handled the check.

July 1994 Millan did not receive a statement for the month of June 1994. Millan's receipt of Dean Witter statements after July 1994 became spotty. She did not question this, despite her expectation that she would receive monthly or quarterly statements and her sister's uninterrupted receipt of monthly statements.

August 1994 Millan received the first of the bogus statements Miguel generated and sent to her until the account is closed. The statements she received beginning in August 1994 did not have the Dean Witter logo on them, were not printed on colored paper, did not have the lines and boxes separating various types of information, and were missing certain financial information. Miguel filed a false change of address form, forging his mother's signature yet again and diverting the actual statements to a post office box. Dean Witter failed to verify the change-of-address information, violating its own policy.

October 5–18, 1994 Millan wrote checks 502 through 505.

October 1994 [3] Millan discovered check 506 was missing. She thumbed through the checkbook and discovered other checks were also missing. She called Dean Witter and was referred to her broker/son. He told her, falsely, that none of the missing checks had been processed. Millan did not speak with any other Dean Witter employee about the missing checks.

October 25, 1994 Millan wrote checks 507 and 508.

November 23, 1994 Millan wrote checks 510 and 511.[4]

December 3, 1994 Millan wrote check 512.

April 11, 1995 Millan wrote check 513.

June 14, 1995 Miguel forged check 514.

After the summer of 1995, Miguel continued to divert his mother's deposits and forge checks on her active assets account. Until he left Dean Witter, his mother did not actually discover any of this. She testified that one of the secretaries at Dean Witter told her she was not the only victim, and asked if the FBI had contacted her. However, the secretary testified she did not remember the event or conversation. In addition to the foregoing, Millan's expert testified that: (1) Dean Witter was negligent in supervising Miguel; (2) Dean Witter breached its fiduciary duty to Millan; (3) Dean Witter did not follow internal or customary securities procedures more closely regulating employee-related accounts, as this was; and (4) account statements are notoriously difficult to interpret, especially for laymen.

█ There is more than a scintilla of evidence, reviewed in the light most favorable to the jury's findings, to support the jury's findings that Millan should have known by July 1994 that something was amiss with her accounts and that she bore 85% of the responsibility. Moreover, these findings are not so against the great weight and preponderance of the evidence as to shock the conscience or render the findings manifestly unjust.

We overrule issues five and seven.

### NEGLIGENCE DAMAGES

In issue eleven, Millan contends that, as a matter of law, she is entitled to damages in the amount of $247,440.00, and thus the trial court erred in refusing to disregard the jury's damages award of $11,433.47. However, because Millan's negligence claims are time barred and because there is sufficient evidence to support the jury's finding that Millan was 85% responsible for her losses, Millan is not entitled to recover any damages. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp. 2002), § 33.001 (Vernon 1997). Accordingly, we decline to reach the merits of Millan's issue.

### REFUSED JURY QUESTIONS

In issue one, Millan argues the trial court erred in not submitting her request-

---

**3.** The precise date is not reflected in the record, but discovery likely occurred between the 18th & 25th of October, based on the dates checks 505 and 507 were written.

**4.** Check 509 was never used at all.

ed issue on breach of fiduciary duty; in issue eight, she argues conversion should have been submitted; and in issue twelve, she argues gross negligence should have been submitted. Because we have held there was sufficient evidence to sustain the jury's finding that Millan should have discovered by July 1994 that something was amiss, Millan's claims for breach of fiduciary duty, conversion, and gross negligence are barred by the two-year statute of limitations. *See* TEX. CIV. REM. & PRAC.CODE ANN. § 16.003(a) (Vernon Supp.2002).

 In issue two, Millan contends the trial court should have submitted a question on whether Miguel was acting with apparent authority. We disagree. Apparent authority is not itself a cause of action; rather, it can be used to establish a principal's liability when there is no actual authority. *See Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 949 (Tex. 1998). Because Miguel was a registered agent for Dean Witter, there was no need to show apparent authority because Miguel had actual authority.

 In issue three, Millan contends the trial court erred by not submitting an issue on unauthorized trading. As Dean Witter notes, none of the authority Millan cites supports the argument that there is an independent cause of action for unauthorized trading.

 In issue four, Millan contends the trial court erred in not submitting a question regarding violations of NASD rules. As in unauthorized trading, there is no independent cause of action for NASD violations. *See Porter v. Shearson Lehman Bros., Inc.,* 802 F.Supp. 41, 63 (S.D.Tex. 1992).

We overrule issues one, two, three, four, eight, and twelve.

## VICARIOUS LIABILITY

At trial, Millan alleged that Dean Witter is vicariously liable for Miguel's fraudulent acts under the doctrine of respondeat superior because he was acting in the course and scope of his employment. At the close of Millan's case-in-chief, Dean Witter moved for directed verdict on the issue of its vicarious liability. The trial court instructed a verdict on the issue, finding that Dean Witter was not vicariously liable for Miguel's actions. In her sixth issue, Millan maintains the trial court erred in granting Dean Witter's motion and should have, instead, submitted the issue of Dean Witter's vicarious liability for fraud to the jury.

 In reviewing a challenge to a directed verdict, we must determine whether there is any evidence to raise a fact issue. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994); *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex.1986). We consider all of the evidence in the light most favorable to the party against whom the verdict was directed, disregarding all contrary evidence and inferences. *S.V. v. R.V.,* 933 S.W.2d 1, 8 (Tex.1996). If the record contains any probative and conflicting evidence on a material issue, then the jury should have resolved the issue. *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex. 1983).

 "Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment...." *Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex.1998). To determine whether an employee's acts are within the scope of his or her employment, we ask whether the employee's actions fall within the scope of the employee's general authority, are in furtherance of the employer's business,

and are for the accomplishment of the object for which the employee was hired. *Leadon v. Kimbrough Bros. Lumber Co.,* 484 S.W.2d 567, 569 (Tex.1972); *Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 357 (Tex.1971); *Darensburg v. Tobey,* 887 S.W.2d 84, 89 (Tex.App.-Dallas 1994, writ denied). In cases involving serious criminal activity, an employer is not liable for intentional and malicious acts that are unforeseeable considering the employee's duties. *Adami v. Dobie,* 440 S.W.2d 330, 334 (Tex.Civ.App.-San Antonio 1969, writ dism'd). Our inquiry, therefore, must first focus on the scope of Miguel's general authority.

■ Miguel, in the course and scope of his employment for Dean Witter opened a brokerage account for his mother. It was within Miguel's general authority to open such accounts for clients, receive deposits to these accounts, and purchase and sell securities as directed by clients. Miguel's activities, however, went far beyond these general brokerage duties. Miguel greatly exceeded the scope of his authority when, through a litany of deceitful acts, he stole money from his mother. Those acts include stealing checks from his mother's bathroom drawer, writing checks on his mother's account, depositing his mother's checks into his own account, forging his mother's signature on numerous occasions, stealing statements from his mother's mailbox, creating and sending bogus statements to his mother, and opening a post office box so he could receive his mother's actual statements. These acts were not related to Miguel's duties and were not within his general scope of authority as a broker for Dean Witter.

We hold there was no evidence that Miguel acted within the scope of his authority as a broker at Dean Witter. Accordingly, there is no evidence to support the submission of the issue of Dean Wit-ter's vicarious liability for fraud to the jury. Issue six is overruled.

■ In issue ten, Millan contends the trial court erred in not submitting a question on exemplary damages based on fraud and breach of fiduciary duty. Millan's breach of fiduciary duty claim is barred by limitations. Because we hold there was no evidence presented to support the submission of Dean Witter's vicarious liability for fraud, Millan was not entitled to have a question regarding exemplary damages submitted with a jury question on fraud. Issue ten is overruled.

CONCLUSION

Having overruled issues one, two, three, four, five, seven, eight, eleven and twelve, we affirm the jury's findings and those portions of the directed verdict dealing with apparent authority, unauthorized trading, NASD violations, breach of fiduciary duty, conversion, negligence, and gross negligence. We also overrule that part of issue nine addressing breach of fiduciary duty, because we have held this claim has a two year statute of limitations. Even though Millan's fraud claim against Dean Witter is not limitations barred, there was no evidence to support submission of the issue to the jury. Accordingly, the trial court's judgment is affirmed.

Dissenting opinion by: CATHERINE STONE, Justice, joined by PHIL HARDBERGER, Chief Justice, and ALMA L. LÓPEZ, Justice.

Concurring and dissenting opinion by: SARAH B. DUNCAN, Justice.

Dissenting opinion by: CATHERINE STONE, Justice, joined by PHIL HARDBERGER, Chief Justice, and ALMA L. LÓPEZ, Justice.

Because I believe the trial court erred in failing to submit a jury issue on fraud, I

dissent from that portion of the opinion which affirms the directed verdict on fraud. In all other regards I concur with the majority opinion.

The parties do not dispute the facts developed at trial. Rather, they dispute whether Dean Witter could be liable for Miguel Millan's fraud. The crux of Dean Witter's argument is that Miguel, by acting in a criminal manner, was acting outside the scope of his authority; thus, Dean Witter contends it should not be vicariously liable for his acts. On rehearing the majority has agreed with this argument. Yet, it is not a defense to liability to claim an agent was authorized only to do those acts that would be lawful. *Arterbury v. Am. Bank & Trust Co.*, 553 S.W.2d 943, 949 (Tex.Civ.App.-Texarkana 1977, no writ). If an agent acts within the scope of his general authority, his wrongful act, although not authorized, will subject his principal to liability. *Id.* In general, an agent's authority is presumed to be coextensive with the business entrusted to his care. *Hedley Feedlot, Inc. v. Weatherly Trust*, 855 S.W.2d 826, 837 (Tex.App.-Amarillo 1993, writ denied). When an agent acts for a principal, the principal is liable for the agent's fraud and misrepresentations, even though the principal has no knowledge of the fraud or misrepresentation and received no benefit from the fraud or misrepresentation.[1] *Id.* Were this not so, a firm could actually rely upon its agents to embezzle from accounts, then claim ignorance. The potential for such mischief was recognized by the court in *Paul F. Newton & Co. v. Tex. Commerce Bank*, 630 F.2d 1111, 1118–19 (5th Cir. 1980), in which it noted, "To allow a brokerage firm to avoid secondary liability simply by showing ignorance of the acts of its registered representative contravenes Congress's intent to protect the public, particularly unsophisticated investors, from fraudulent practices." An exception to the principle of respondeat superior, usually applied in cases involving serious criminal activity, is that an employer is not liable for intentional and malicious acts that are unforeseeable considering the employee's duties. *Hooper v. Pitney Bowes, Inc.*, 895 S.W.2d 773, 778 (Tex.App.-Texarkana 1995, no writ) (citing *Adami v. Dobie*, 440 S.W.2d 330, 334 (Tex.Civ.App.-San Antonio 1969, writ dism'd)). In this case Miguel's acts were foreseeable and within the scope of his authority.

Scope of authority is generally defined as those actions an employee takes in furtherance of the employer's business. *See* 1 COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 7.6 (9th ed.2000). The test to determine an employer's liability for the acts of its employees is whether on the occasion in question, the master had the "right and power to direct and control [the servant] in the performance of the causal act or omission at the very instance of the act or neglect." *Am. Nat'l Ins. Co. v. Denke*, 128 Tex. 229, 95 S.W.2d 370, 373 (1936). To meet this test, the employee's act must (1) fall within the scope of the employee's general authority, (2) be in furtherance of the employer's business, and (3) be for the accomplishment of the object for which the employee was hired. *Chevron U.S.A., Inc. v. Lee*, 847 S.W.2d 354, 355 (Tex.App.-El Paso 1993, no writ). The Workers' Compensation Act defines scope of employment in a similar fashion, describing it as "an

1. Here, Dean Witter benefitted from Miguel's fraud, if unwittingly, because it profited from the stock transactions involved. Dean Witter's claim that it cannot be vicariously liable for Miguel's actions because Miguel was furthering his own interests and not furthering the purpose of carrying out Dean Witter's business is belied by the fact that Dean Witter derived financial benefit from Miguel's actions.

activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by the employee while engaged in or about the furtherance of the affairs or business of the employer." Tex. Lab.Code Ann. § 401.011(12) (Vernon Supp.2002).

The key inquiry appears to center on whether the act, if performed properly, is part of an employee's general authority. For example, it is not ordinarily within the scope of a servant's authority to commit an assault on a third person. *Ana, Inc. v. Lowry,* 31 S.W.3d 765, 769 (Tex.App.-Houston [1st Dist.] 2000, no pet.). However, an employer will be held liable for its employee's assault on a third party if that assault stems directly from the employee's exercise (however inappropriate or excessive) of a delegated right or duty, such as being in charge of admissions to a club. *Id.* at 770. The Houston court analyzed whether the employer should be held liable for the employee's alleged assault of a customer in terms of whether the employee's alleged actions were "an overzealous misuse of his authority as an employee or were utterly unrelated to his duties." *Id.*

Without citing to any authority, the majority concludes that Miguel Millan's acts were not related to his duties and "were not within his general scope of authority as a broker for Dean Witter." (Opinion at p. 768). To the contrary, as a broker for Dean Witter, Miguel was entrusted with the business of opening brokerage accounts for clients, receiving deposits to those accounts, making purchases of securities as directed by clients, and selling them as directed. These acts comprised the scope of his general authority; he misused his authority, but the acts were not "utterly unrelated" to his duties. Even those acts he may have undertaken outside of his place of employment—pilfering his

mother's checks, renting a post office box, rifling his mother's mailbox—were merely additional acts that furthered his fraud. Miguel acted within the course and scope of his employment, albeit improperly. Further, given a broker's customary duties, it was not unforeseeable that Miguel could have used his position to defraud a customer. Indeed, Dean Witter's policy of monitoring certain accounts—such as family accounts—more closely, recognizes the potential for fraudulent acts with such accounts.

When the standard of review is properly applied and the case is reviewed in the light most favorable to the party against whom the directed verdict was entered, I believe the trial court's judgment on fraud must be reversed.

Concurring and dissenting opinion by: SARAH B. DUNCAN, Justice.

I concur in the majority's judgment and opinion regarding Millan's negligence, gross negligence, conversion, and fraud claims. There is no evidence to support Millan's fraud claim; and the remainder of the claims are barred by the two-year statute of limitations. However, I disagree with the majority's adherence to its earlier holding in *Farias v. Laredo Nat. Bank,* 985 S.W.2d 465, 471 (Tex.App.-San Antonio 1997, pet. denied), that a breach of fiduciary duty claim is governed by a two-year statute of limitations.

At the time *Farias* issued, I believed it was wrongly decided on the limitations point and thus joined a majority of the court in granting Farias's motion for reconsideration en banc. Unfortunately, however, our error remained uncorrected. In line with the appellee's argument, the order granting Farias's motion for en banc review was withdrawn and Farias's motion was dismissed for lack of jurisdiction—erroneously in my view. *See Yzaguirre v.*

*Gonzalez,* 989 S.W.2d 111, 114 (Tex.App.-San Antonio 1999, pet. denied) (holding " 'motion for rehearing,' as used in Rule 19.1(b), includes motions for reconsideration en banc").

I would take this opportunity to correct *Farias,* hold that a breach of fiduciary duty claim is governed by a four-year statute of limitations, reverse the trial court's take-nothing judgment on Millan's breach of fiduciary duty claim, and remand this claim to the trial court for a new trial.