**BCY WATER SUPPLY CORPORATION, Appellant,**

v.

**RESIDENTIAL INVESTMENTS, INC., Appellee.**

No. 12–03–00249–CV.

Court of Appeals of Texas, Tyler.

Feb. 10, 2005.

Opinion Denying Rehearing April 29, 2005.

Daniel F. Dean, Palestine, M. Keith Dollahite, Tyler, for appellant.

Reed Jackson, Fairfield, Brian Dean Walsh, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

*OPINION*

DIANE DeVASTO, Justice.

BCY Water Supply Corporation appeals the trial court's judgment entered against it in favor of Residential Investments, Inc. BCY raises four issues on appeal. We reverse and render.

### BACKGROUND

BCY is a nonprofit corporation that provides water service to certain parts of Anderson County, Texas. Residential Investments was considering purchasing an 8.02–acre tract of land in Anderson County, which it intended to subdivide into four parcels and improve with frame houses. The subject property was located in BCY's water supply coverage area. John Brown, on behalf of Residential Investments, went to BCY's office to inquire about water service for the subject property. When Brown arrived, only two persons were present at BCY's office—Barry Thornton, who performed maintenance work for BCY,[1] and Lana Hart, BCY's office secretary and bookkeeper. Brown inquired of Thornton concerning whether it would be possible to get water service at the subject property. According to Brown, Thornton responded that there would be no problem getting water service for the property.[2] Brown testified that, based on Thornton's statement, Residential Investments purchased the subject property and began making improvements thereto. Subsequently, a BCY board member notified Brown that he could not get water service

until he upgraded to a four-inch water line at his own expense. Residential Investments ultimately sold the subject property.

Residential Investments filed the instant suit in April 2000 alleging that BCY improperly refused to provide water services to it.[3] Subsequently, Residential Investments amended its pleadings, deleting its denial of service allegations and adding common law claims of negligent misrepresentation and promissory estoppel. The matter proceeded to trial. A jury found BCY liable for negligent misrepresentation, awarding Residential Investments compensatory damages in the amount of $18,000.00 and exemplary damages in the amount of $1.00. This appeal followed.

### JURISDICTION

In its first issue, BCY argues that the trial court lacked subject matter jurisdiction to consider the lawsuit filed by Residential Investments because the suit arose from BCY's denial of water service. Our trial courts are courts of general jurisdiction. *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex.2002); *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex.2000). The Texas Constitution provides that a trial court's jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by the Texas Constitution or other law on some other court, tribunal, or administrative body.

---

1. The record reflects that Thornton's job duties included maintaining the wells and plants, performing repairs to the water lines and repairing leaks, and installing new meters.

2. The testimony concerning the specifics of Brown's request and Thornton's answer is conflicting and will be discussed in greater detail in our analysis.

3. At the time the lawsuit was filed, Residential Investments had not applied to BCY for water service. Residential Investments did later file an application requesting four water meters. BCY granted the application, provided that Residential Investments upgraded the water lines at its own expense.

*See* Tex. Const. art. V, § 8; *Subaru*, 84 S.W.3d at 220. By statute, trial courts have the jurisdiction provided by Article V, Section 8 of the Texas Constitution, may hear and determine any cause that is cognizable by courts of law or equity, and may grant any relief that could be granted by either courts of law or equity. *See* Tex. Gov't Code Ann. §§ 24.007–.008 (Vernon 2004). Courts of general jurisdiction presumably have subject matter jurisdiction unless a contrary showing is made. *Subaru*, 84 S.W.3d at 220.

■ On the other hand, there is no presumption that administrative agencies are authorized to resolve disputes. *Id.* Rather, an agency may exercise only those powers the law, in clear and express statutory language, confers upon it. *Id.* (citing *Key W. Life Ins. Co. v. State Bd. of Ins.*, 163 Tex. 11, 350 S.W.2d 839, 848 (1961)). Courts will not divine by implication additional authority to agencies, nor may agencies create for themselves any excess powers. *See id.*

■ Under the exclusive jurisdiction doctrine, the legislature grants an administrative agency the sole authority to make an initial determination in a dispute. *See Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex.2000). An agency has exclusive jurisdiction when a pervasive regulatory scheme indicates that the legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed. *See Subaru*, 84 S.W.3d at 221. Whether an agency has exclusive jurisdiction depends on statutory interpretation. *Id.* Typically, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *See Bennett*, 35 S.W.3d at 15. Until then, the trial court lacks subject matter jurisdiction and must dismiss without prejudice the

claims within the agency's exclusive jurisdiction. *Subaru*, 84 S.W.3d at 221.

Under the Texas Government Code, the Texas Commission on Environmental Quality (the "TCEQ") "shall have exclusive original jurisdiction over water and sewer utility rates, operations and services not within the incorporated limits of a municipality exercising exclusive original jurisdiction over those rates, operations, and services...." Tex. Water Code Ann. § 13.042(e) (Vernon 2000). Thus, based on the express language of Section 14.042(e), the TCEQ's jurisdiction under certain circumstances is exclusive. *Id.* The question before us in the case at hand is whether such circumstances that would give rise to the TCEQ's exclusive jurisdiction are present.

■ Determining if an agency has exclusive jurisdiction requires statutory construction and raises jurisdictional issues. *Subaru*, 84 S.W.3d at 222. Thus, whether an agency has exclusive jurisdiction is a question of law we review de novo. *Id.; see El Paso Nat'l Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex.1999). Our objective when construing a statute is to determine and give effect to the legislature's intent. *See Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex.1999). To ascertain that intent, we look first to the statute's plain language and give words their ordinary meaning. *Id.* We must view the statute's terms in context and give them full effect. *Id.* Further, we presume that the legislature acted with knowledge of the common law and court decisions. *Id.*

BCY acknowledges that Residential Investments's amended pleadings seek redress based on common law causes of action. It argues, however, that since such claims *arise from* its allegations that it was improperly denied water service by BCY, the suit falls under the TCEQ's exclusive

jurisdiction pursuant to Section 14.042(e). In support of its argument, BCY relies heavily on *Jordan v. Staff Water Supply Corp.*, 919 S.W.2d 833 (Tex.App.-Eastland 1996, no writ). In *Jordan,* the court held that the trial court correctly determined that the commission had jurisdiction over Jordan's claim regarding failure to provide water service. However, the court further held that the trial court properly had jurisdiction over claims related to misconduct by the directors of Staff Water Supply Corporation.[4] *Id.* at 835–36. In *Lake Country Estates, Inc. v. Toman,* 624 S.W.2d 677 (Tex.App.-Fort Worth 1981, writ ref'd n.r.e.), which BCY also cites in its brief, the court reached a similar conclusion. *Id.* at 682 (holding that despite regulatory agency's jurisdiction over matters relating directly to directors' responsibilities to make decisions regarding the expansion of the water district's utility system, the plaintiff's common law causes of action for slander and tortious interference with contract were within the trial court's jurisdiction).

█ We iterate that there is no presumption that administrative agencies are authorized to resolve disputes and that such agencies may exercise only those powers the law, in clear and express statutory language, confers upon them. *Subaru,* 84 S.W.3d at 220. BCY's interpretation of Section 13.042(e) to include matters *arising from* water and sewer utility rates, operations, and services is neither supported by the express language of the statute nor the case law upon which BCY relies. The words "arising from" do not appear in Section 13.042(e), and we may not include them by implication. *Subaru,*

84 S.W.3d at 220. Rather, we must presume that, because the legislature chose not to include the words "arising from" in Section 13.042(e), it intended to limit the TCEQ's jurisdiction specifically to matters directly related to water and sewer utility rates, operations, and services, such as was initially pleaded by Residential Investments in the instant case, but later abandoned. *See Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981) (every word excluded from a statute must be presumed to have been excluded for a purpose).

█ A plaintiff's petition defines the issues in the lawsuit. *See Murray v. O & A Express, Inc.,* 630 S.W.2d 633, 636 (Tex. 1982). An amended document causes the instrument for which it is substituted to no longer be regarded as a part of the pleading in the record. *See* Tex.R. Civ. P. 65. Here, the second amended petition filed by Residential Investments raises common law claims for negligent misrepresentation and promissory estoppel. By omitting it from its second amended petition, Residential Investments abandoned its denial of service cause of action. Considering the express language of the statute, we conclude that such common law causes of action do not fall within the TCEQ's exclusive jurisdiction. Therefore, we hold that the trial court did not err in declining to dismiss the action. BCY's first issue is overruled.

*EVIDENTIARY SUFFICIENCY*

█ In its second issue, BCY argues that the evidence is both legally and factually insufficient to support the jury's find-

4. Jordan alleged that the actions of the directors of Staff were illegal, oppressive, and fraudulent and that the assets of Staff were being misapplied, wasted, or mismanaged. *Id.* at 834. Jordan elaborated that the directors and control persons had failed to dis-

charge their obligation to provide water and water meters to every person living within the areas served by the corporation as required by Section 13.250 of the Texas Water Code. *Id.*

ing as to negligent misrepresentation. In reviewing a legal insufficiency or no evidence issue, we must consider only the evidence and inferences that tend to support the jury's verdict, disregarding all contrary evidence and inferences. *See Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998). We may only sustain a legal insufficiency issue when the record discloses one of the following: (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (4) the evidence establishes conclusively the opposite of a vital fact. *See Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). It is not within our power to second guess the factfinder unless only one inference can be drawn from the evidence. *See Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 461 (Tex.1992). If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient. *See Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993).

To support a finding of negligent misrepresentation, the record must contain evidence supporting that (1) the defendant, in the course of his business, profession, or employment, or in another transaction in which he had a pecuniary interest, supplied to the plaintiff false information for guidance in a business transaction, (2) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information, (3) the plaintiff justifiably relied on the information, and (4) the defendant's negligent misrepresentation proximately caused the plaintiff to suffer pecuniary loss. *See McCamish,*

*Martin, Brown, and Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 791 (Tex. 1999); *see also* RESTATEMENT (2d) OF TORTS § 552 (1977).

In the case at hand, the record contains various witnesses' recollections of the conversation that occurred between Brown and Thornton. According to Brown's testimony, he told Thornton that he was buying an eight-acre tract of land near his house and wanted to determine if he could get water service before he bought the property because he wanted to subdivide it and would require between one and four water meters. Brown testified that Thornton said there would not be a problem getting a meter because BCY had just upgraded the lines running along Highway 645. Brown further stated that Thornton, after checking with Hart, represented that the water line had been upgraded as far as in front of County Road 2809.[5] Moreover, Brown testified that Thornton stated Brown should simply call him when he was ready and Thornton would install the meter at a cost of one thousand eighty-five dollars. Brown further stated that in reliance on Thornton's statement, he purchased the subject property.

To the contrary, Thornton testified that Brown merely asked if he could get a single meter installed at the subject property. According to Thornton's testimony, he responded that he could not foresee there being a problem installing a meter on the property although BCY was operating near full capacity, but that, ultimately, Brown would have to get approval from the board of directors before he could get a meter installed. Thornton further testified that Brown never told him that he intended to subdivide the property. Moreover, Thornton stated that he never guar-

---

5. According to Brown, there is approximately one mile of County Road 2809 and one mile of County Road 2810 between Highway 645 and the subject property.

anteed to Brown that he could have the meter installed. Thornton denied quoting Brown a cost for the installation of a meter.

Hart testified that she was present during the conversation at issue between Brown and Thornton. Hart stated that Brown asked Thornton about having a water meter installed on his property and that Thornton told Brown that the line was at capacity at that time. She stated that Thornton also told Brown that he would need to go to the board of directors to determine what he would need to do to upgrade the water line so that he could get his meter. Hart further testified that Brown did not say anything about his intent to subdivide the subject property.

BCY cites *Airborne Freight Corp., Inc. v. C.R. Lee Enterprises,* 847 S.W.2d 289 (Tex.App.-El Paso 1992, writ denied) and argues that there was no evidence that Thornton made a negligent misrepresentation regarding a fact that existed at the time of the alleged statement, but rather, that Thornton's statement concerned future performance. Residential Investments contends that BCY's reliance on *Airborne Freight* is misplaced because the court's analysis concerning existing facts dealt with actual fraud, which requires a showing of intent, not negligent misrepresentation, which merely involves careless actions.

 In a cause of action for negligent misrepresentation, the misrepresentation at issue must be one of existing fact. *See Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact. *See Miksch v. Exxon Corp.,* 979 S.W.2d 700, 706 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). In *Airborne Freight,* the plaintiff alleged causes of action for breach of contract, fraud, and negligent misrepresentation. *Id.* at 291. The plaintiff's claims of fraud and negligent misrepresentation were both submitted to the jury. *Id.* at 293. There, the court specifically stated, "the sort of 'false information' contemplated in a negligent misrepresentation case is a misstatement of *existing fact.*" *Id.* at 294. The court ultimately concluded with regard to the plaintiff's negligent misrepresentation theory that the plaintiff's statement could not be characterized as a misrepresentation of existing fact and that it was, if anything, a conditional promise. *Id.* at 298. Thus, contrary to Residential Investments's contention, the court's discussion in *Airborne Freight* was not limited to a claim of fraud. Furthermore, whether the misrepresenting party did so intentionally or negligently has no bearing on the issue of what was misrepresented.

 In the instant case, Thornton's statement, even when considered in a light that tends to support the jury's verdict, is not one of existing fact. It is undisputed that Residential Investments had not purchased the subject property at the time Thornton made the statement to Brown. Indeed, the record reflects that BCY could not get water service for property that it did not own. Thus, if anything, Thornton's statement amounted to no more than a conditional promise of future performance contingent on BCY's ownership of the property.[6] *See, e.g., Airborne Freight,* 847 S.W.2d at 298; *see also Manon v. Solis,* 142 S.W.3d 380, 388 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) ("the sort of

6. By this statement, we do not address whether the evidence establishes an agency relationship between BCY and Thornton.

false information contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct."). We conclude that there was no evidence supporting that the false information allegedly represented by BCY to Residential Investments comprised facts then in existence. *Id.* Therefore, we hold that the evidence was legally insufficient to support the jury's verdict. BCY's second issue is sustained.

### DISPOSITION

Having sustained BCY's second issue, we **reverse** the trial court's judgment and **render** judgment that Residential Investments take nothing on its claims against BCY.

### OPINION DENYING MOTION FOR REHEARING

By opinion dated February 10, 2005,[1] we reversed the trial court's judgment in favor of Residential Investments, Inc. concluding that there was legally insufficient evidence to support the jury's finding of negligent misrepresentation. Accordingly, we rendered judgment in favor of BCY Water Supply Corporation. *See* TEX. R.APP. P. 43.3. Residential Investments filed a motion for rehearing, to which BCY responded. Residential Investments's motion for rehearing is overruled. However, we address Residential Investments's third issue on rehearing.

■ In its third issue on rehearing, Residential Investments argues that we erroneously rendered judgment in favor of BCY on "no evidence" grounds for which no proper predicate was laid. Specifically, Residential Investments argues that we cannot render on a no-evidence issue when the issue was first presented to the trial

court in a motion for new trial. *See, e.g., Horrocks v. Texas Dep't of Transp.,* 852 S.W.2d 498, 499 (Tex.1993); *Ana, Inc. v. Lowry,* 31 S.W.3d 765, 772 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

■ In *Horrocks,* the supreme court held that, ordinarily, an appellate court should render judgment after sustaining a complaint as to the legal sufficiency of the evidence, but where the appealing party fails to properly lay a predicate for rendition, the case must be remanded. *Horrocks,* 852 S.W.2d at 499. When the appellant in a jury trial raises a "no evidence" challenge for the first time in a motion for new trial, without objecting to jury submissions or without moving for directed verdict, for judgment notwithstanding the verdict, or to disregard jury findings, the only predicate laid by the appellant is for the granting of a new trial. *Lowry,* 31 S.W.3d at 772.

BCY responds that although it did not challenge the legal sufficiency of the jury's finding on the issue of negligent misrepresentation until filing the document entitled "Defendant's Motion for a New Trial," the document, in substance, properly laid the predicate for rendition. We agree.

■ Misnomer of a pleading does not render it ineffective, and the court will treat the pleading as if it had been properly named. *See* TEX.R. CIV. P. 71. We look to the substance of the plea to determine its nature, not merely at the form of title given to it. *See State Bar v. Heard,* 603 S.W.2d 829, 833 (Tex.1980). Moreover, Texas Rule of Civil Procedure 301 does not provide a deadline for filing a motion for judgment notwithstanding the verdict ("JNOV") or motion to disregard a jury finding. *See* TEX.R. CIV. P. 301. However, case law has traditionally provided that a

---

1. *See BCY Water Supply Corp. v. Residential Investments, Inc.,* No. 12–03–00249–CV, 2005 WL 332014 (Tex.App.-Tyler Feb.10, 2005, no pet. h.).

motion for JNOV could be filed after judgment is rendered as long as the trial court retained jurisdiction over the case. *See, e.g., Needville ISD v. S.P.J.S.T. Rest Home,* 566 S.W.2d 40, 42 (Tex.App.-Beaumont 1978, no writ); *but see Commonwealth Lloyd's Ins. Co. v. Thomas,* 825 S.W.2d 135, 141 (Tex.App.-Dallas 1992), *vacated w.r.m. pursuant to settlement,* 843 S.W.2d 486 (Tex.1993) (motion for JNOV must be filed within same time limits as motion for new trial).

Here, in its pleading entitled "motion for new trial," [2] BCY contended that there was no evidence to support the jury's finding as to negligent misrepresentation. BCY further stated,

> MOVANT requests an evidentiary hearing on the allegations raised herein. Additionally, MOVANT urges the Court to disregard the answers as explained in this motion and to modify the judgment as requested herein. Alternatively, MOVANT requests that the Court order a new trial.

We hold that BCY's "motion for new trial," in substance, amounted to a motion for JNOV or to disregard jury findings and, alternatively, a motion for new trial. Therefore, BCY properly laid the predicate for the rendition of judgment. *See Lowry,* 31 S.W.3d at 772.

---

**2.** Under either rule set forth above concerning the deadline for filing a motion for JNOV, the record reflects BCY's motion was timely filed.