COURT 
OF APPEALS
                                       
SECOND DISTRICT OF TEXAS
                                                   
FORT WORTH
 
 
                                        
NO. 2-03-123-CV
 
 
CHARLES 
GLEN HYDE, HYDE-WAY,                                     
APPELLANTS
INC. AND AVIATION 
UTILITIES
SERVICES, 
INC.
 
                                                   
V.
 
JIMMY RAY 
AND TRENT CRAGIN                                           
APPELLEES
 
                                              
------------
 
            
FROM THE 393RD DISTRICT COURT OF DENTON 
COUNTY
 
                                              
------------
 
                                             
OPINION
 
                                              
------------

This 
is an accelerated appeal from an order granting a temporary injunction 
compelling Appellants to restore, reconnect, and maintain a continued supply of 
water and water service to Appellees= 
airport properties.  We hold that 
because the trial court did not have jurisdiction to order the temporary 
injunction, the temporary injunction is void.  Accordingly, we vacate the trial 
court=s 
order granting the injunction, dissolve the temporary injunction, and remand 
this case for proceedings consistent with this opinion.
I.  FACTUAL AND PROCEDURAL 
BACKGROUND
The 
Northwest Regional Airport is located near Roanoke, Texas, and is owned by Texas 
Air Classics (TAC).  Aviation 
Utilities Services, Inc. (AUSI) operates a water system at the airport.  Hyde-Way, Inc., was both 
entities= 
predecessor in interest.  TAC, AUSI, 
and Hyde-Way are or were all operated by Charles Glen 
Hyde.
In 
1991, Jimmy Ray purchased a hangar at the airport.  Deed restrictions prohibited the hangar 
from being used for residential purposes, but Ray constructed an apartment in 
the hangar anyway and occupied it as his permanent residence.  In 2002, Ray sold the apartment to Trent 
Cragin, who uses the property for commercial purposes.  Ray moved his residence to an apartment 
in a different hangar at the airport.

Since 
1982, the water source to the airport=s 
property owners had been a well operated by Hyde-Way and then AUSI.  Ray did not use this well for drinking, 
but used it for all other purposes, including bathing and shaving.  By letter dated August 15, 2001, Hyde 
advised water users, including Ray, that AUSI=s well 
had gone dry and that AUSI had drilled a new well.  He said that AUSI was requesting 
assistance from hangar owners in defraying the expenses of operating a new 
well.  Ray did not respond to this 
letter.
By 
letter dated December 5, 2002, Hyde advised water users, including Appellees Ray 
and Cragin, that AUSI=s 
water service was entirely within the town of Northlake=s 
authorized water service area.  Hyde 
informed the users that the Texas Commission on Environmental Quality (TCEQ) had 
warned AUSI, by letter dated September 19, 2001, that it was illegal for third 
parties, such as AUSI, to provide water service within another 
entity=s 
authorized service area and that new property owners must make arrangements with 
the only legally recognized entity, Northlake, for water services.  The letter urged users to contact 
Northlake if they had recently transferred ownership.  Hyde personally told Ray that he would be 
cutting off the water to Appellees= hangars because 
they were new customers, each having recently transferred ownership.  However, Appellees refused to get water 
from Northlake because it was Anot economically 
feasible@ to do 
so.

On February 14, 
2003, Appellees filed suit against Hyde and Hyde-Way. They requested a 
declaratory judgment establishing that Hyde and Hyde-Way were responsible for 
providing them water and that they be enjoined from terminating the water 
supply.  They also claimed that Hyde 
and Hyde-Way were liable for breach of contract.  Further, they requested a temporary 
restraining order and a temporary injunction restraining Hyde and Hyde-Way from 
terminating water services, and they sought damages if the injunctive relief did 
not dispose of all issues.  The 
trial court issued the temporary restraining order on the same day that Ray and 
Cragin filed suit.
On March 18, 
2003, Hyde and Hyde-Way filed a plea to the jurisdiction contending that the 
action was within the jurisdiction of the town of Northlake and/or TCEQ and 
therefore beyond the subject matter of the district court.    While the case was pending 
and after the temporary restraining order had lapsed, on April 12, 2003, Hyde, 
as president of AUSI, terminated the water supply and service to 
Appellees= 
properties.  Hyde reasoned that his 
actions were Ain compliance 
with TCEQ@ because in 2002 
Cragin acquired ownership of Ray=s hangar and Ray 
acquired ownership of a new hangar; they were thus Anew service 
connections@ acquired after 
the September 19, 2001 letter, and consequently would require new service 
agreements from Northlake.

On April 25, 
2003, Appellees filed an amended petition to add AUSI as a defendant and to add 
a claim for fraudulent or negligent misrepresentation.  Appellees also filed a response to the 
plea to the jurisdiction, claiming that no exclusive jurisdiction lies with any 
environmental or administrative entity.          
On April 30, 2003, the trial court denied Hyde and Hyde-Way=s March 18, 2003 
plea to the jurisdiction and issued a temporary injunction mandating that 
Appellants Hyde, Hyde-Way, and AUSI restore, reconnect, and maintain a continued 
supply of water and water services.  
The basis for the temporary injunction was that Appellees were 
irreparably injured because there was no viable source of water for them pending 
the outcome of the suit.  The 
temporary injunction also enjoined Appellees from using the water for human 
consumption.
During the 
course of the case, Appellees again amended their petition to add TAC as a 
defendant in the suit.  They also 
added  many causes of action, 
including claims of violation of deed restrictions, misappropriation, 
conversion, theft, fraud, tortious interference with existing contractual 
relations, tortious interference with prospective business relations, and breach 
of duty to provide an accounting.  
Appellants and TAC filed a counterclaim for violation of deed 
restrictions.
In May 
2003, Appellants filed in this court an accelerated appeal from the temporary 
injunction and an emergency motion to stay the injunction pending the 
appeal.  On the same day, this court 
granted the stay motion, staying the temporary injunction.
On 
December 9, 2003, Appellees filed an emergency motion to modify or lift the 
stay, and on January 26, 2004, this court granted the motion.  Thus, the stay was lifted and the 
temporary injunction once again became 
effective.

Following 
the filing of the Appellants= 
notice of appeal, on June 4, 2003, the Executive Director of TCEQ submitted a 
preliminary report and petition to TCEQ, alleging that AUSI had committed 
numerous violations of the Texas Administrative Code, Health and Safety Code, 
and Water Code, and suggesting that TCEQ assess penalties and require certain 
actions of AUSI.  AUSI filed a plea to the jurisdiction of 
the TCEQ proceedings, alleging that TCEQ lacked jurisdiction because AUSI does 
not provide water for human consumption and is not a public water system subject 
to regulation by TCEQ.
As a result of 
the TCEQ proceedings, on December 9, 2003, this court abated the appeal pending 
the disposition of those proceedings.
On January 24, 
2005, TCEQ=s Administrative 
Law Judge (ALJ) denied AUSI=s plea to the 
jurisdiction and ordered that the parties proceed to set a hearing on the 
merits.  However, on June 8, 2005, 
the ALJ granted TCEQ >s motion to 
dismiss the case without prejudice due to the unavailability of necessary 
witnesses.  As a result, this court 
reinstated the appeal on the docket.

On 
appeal, Appellants argue that the trial court abused its discretion by ordering 
the temporary injunction because 1) the trial court lacked subject matter 
jurisdiction to grant such relief, 2) the temporary injunction potentially 
required Appellants to violate the law, 3) Appellants had no obligation to 
provide perpetual water supply to Appellees, and 4) Appellees failed to adduce 
the clear and convincing evidence required to support the mandatory relief 
granted by the temporary injunction.
                                      
II.  LEGAL 
ANALYSIS
A.  Standard of Review

Our 
review is strictly limited to whether the trial court abused its discretion in 
granting the temporary injunction.[1]  We may not substitute our judgment for 
that of the trial court by vacating or modifying an injunction simply because we 
would have decided otherwise.[2]  An abuse of discretion does not occur as 
long as there is some evidence to support the trial court=s 
decision.[3]  Furthermore, an abuse of discretion does 
not exist where the trial court bases its decision on conflicting evidence.[4]  As the reviewing court, we must draw all 
legitimate inferences from the evidence in a manner most favorable to the trial 
court=s 
order granting a temporary injunction and determine whether the order was so 
arbitrary as to exceed the bounds of reasonable discretion.[5]
                                
B.  Subject Matter 
Jurisdiction
We 
first consider Appellants= issue 
that the temporary injunction was improperly granted because the trial court 
lacked subject matter jurisdiction to grant such relief.

Appellees claim 
that by arguing that the trial court has no subject matter jurisdiction, 
Appellants are attempting to conduct an impermissible interlocutory appeal of 
their plea to the jurisdiction, which was denied by the trial court. Texas Civil 
Practices and Remedies Code Section 51.014(a)(4) specifically allows an appeal 
from an interlocutory order granting or refusing a temporary injunction.[6] 
 That section also allows an appeal 
from an interlocutory order granting or denying a plea to the jurisdiction filed 
by a Agovernmental 
unit.@[7]  On the other hand, orders overruling 
pleas to the jurisdiction by private parties are generally interlocutory and 
unappealable until a final judgment has been rendered.[8]  Appellants are appealing from the order 
granting the temporary injunction, not the plea to the jurisdiction.  Significantly, Appellants are not 
questioning the trial court=s 
subject matter jurisdiction to hear the entire case.  Rather, Appellants are only questioning 
the trial court=s 
jurisdiction to issue the injunction.  
Thus, this issue is not an impermissible appeal of Appellants= plea 
to the jurisdiction, and this court must decide whether the trial court had 
jurisdiction to issue the injunction.

Trial 
courts are courts of general jurisdiction.[9]  The Texas Constitution provides that a 
trial court=s 
jurisdiction consists of exclusive, appellate, and original jurisdiction of all 
actions, proceedings, and remedies, except in cases where exclusive, appellate, 
or original jurisdiction may be conferred by the Texas Constitution or other law 
on some other court, tribunal, or administrative body.[10] 
 By statute, trial courts 
have the jurisdiction provided by Article V, Section 8 of the Texas 
Constitution, may hear and determine any cause that is cognizable by courts of 
law or equity, and may grant any relief that could be granted by either courts 
of law or equity.[11]  Courts of general jurisdiction 
presumably have subject matter jurisdiction unless a contrary showing is made.[12]  A similar presumption does not exist for 
an administrative agency, which may exercise only those powers that the law, in 
clear and express statutory language, confers upon it.[13]

Under 
the exclusive jurisdiction doctrine, the legislature grants 
an administrative agency the sole authority to make an initial determination in 
a dispute.[14]  An agency has exclusive jurisdiction 
when a regulatory scheme indicates that the legislature intended for the 
regulatory process to be the exclusive means of remedying the problem to which 
the regulation is addressed.[15]  Because an agency=s 
power is derived from a statute, whether it has exclusive jurisdiction depends 
on statutory interpretation.[16]  If an agency has exclusive jurisdiction, 
a party must exhaust all administrative remedies before seeking judicial review 
of the agency=s 
action.[17]  Until the party does so, the trial court 
lacks subject matter jurisdiction of the claims within the agency=s 
exclusive jurisdiction.[18]

Because 
determining whether an agency has exclusive jurisdiction requires statutory 
construction and raises 
jurisdictional issues, it is a question of law we review de novo.[19]  As such, this court exercises its own 
judgment and the trial court=s discretion is 
afforded no deference.[20]  Our objective when construing a statute 
is to determine and give effect to the legislature=s intent.[21]  To ascertain that intent, we look first 
to the statute=s plain language 
and give words their ordinary meaning.[22]  We must view the statute=s terms in 
context and give them full effect.[23]  Further, we presume that the legislature 
acted with knowledge of the common law.[24]

Section 
13.042(e) of the 
Texas Water Code provides that the TCEQ has Aexclusive 
original jurisdiction over water and sewer utility rates, operations and 
services not within the incorporated limits of a municipality exercising 
exclusive original jurisdiction over those rates, operations, and 
services.@[25]  Both rate and service are further 
defined only to include those pertaining to a Aretail public 
utility,@[26] and the purpose 
of Chapter 13 is to regulate retail public utilities.[27]  Thus, Section 13.042(e) does not apply 
to Appellants unless they are Aretail public 
utilities.@  A 
Aretail 
public utility@ is 
defined as Aany 
person, corporation, public utility, or [other entity] operating, maintaining, 
or controlling in this state facilities for providing potable water 
service or sewer service, or both, for 
compensation.@[28]  APotable 
water@ is 
not defined in Chapter 13 of the Water Code, but is defined by the 
Administrative Code as Awater 
that is used for or intended to be used for human consumption or household 
use.@[29]  Thus, to determine whether Appellants 
are Aretail 
public utilities,@ we 
must determine whether Appellants 1) provide potable water service or sewer 
service, and 2) whether they do so for compensation.
Appellees 
argue that because the water is not potable, the first portion of the definition 
excludes Appellants.  However, 
looking to the 
statute=s plain language 
and viewing the terms in context, we believe that the word Apotable@ only modifies 
Awater 
service,@ rather than 
Asewer 
service.@  Thus, because Ray admitted that he used 
and will use the water to flush his toilets, we believe that Appellants do in 
fact meet the first portion of the definition by providing sewer service, 
regardless of whether or not the water was 
potable.

Still, 
Appellants are not Aretail public 
utilities@ if they do not 
provide the service Afor 
compensation.@  Appellants charged Appellees and other 
airport occupants monthly license fees for all of the airport subdivision 
services, including maintenance of the taxiways.  Appellees claim that some of these funds 
have been used towards expenses associated with the water production and 
distribution system.  However, at 
the hearing on the temporary injunction, Hyde contended that none of the money 
collected as license fees ever Aended up 
in@ the water 
system.  Also, in a letter exhibit 
to the court and throughout the case, Appellants asserted that they were 
providing Afree 
water@ to the airport 
property owners.
Regardless, 
separate and apart from the monthly license fee payments, Ray has made two 
payments for his water supply.  At 
the temporary injunction hearing, Appellees offered and the trial court admitted 
into evidence a 1993 letter from Hyde, as president of AUSI, to all water 
users.  The letter, in relevant 
part, stated that:
free water to all airport hangars 
will be discontinued.  The water 
system has been sold to [AUSI].  If 
you signed a water agreement (see sample) upon purchase of your property, it 
will be honored provided the tap fee is paid on or before December 31, 1993, 
otherwise a $500.00 tap fee will be charged to all 
hangars.
Over the past eleven years 
Hyde-Way, Inc., has given away over $190,000 of free water, but . . . this 
service can no longer be provided free of charge.
 
Then, in 1995, 
Ray received another letter from Hyde stating that because there had been a 
major breakdown of the water system, AUSI was out of money.  The letter continued 
that:
if each large hangar would 
contribute $250.00. . .the repair reserve will be reinstated. . .There will be 
future water problems that will require funding.  If a voluntary contribution is not made, 
there will be no other alternative but to discontinue water service to that 
hangar.
Please make checks payable to 
[AUSI].
 

Ray testified 
that he paid $250.00 in1993 in response to the first letter and paid another 
$250.00 in 1995 in response to the second letter.  Thus, RayCand perhaps 
othersChave made 
payments to Appellants in exchange for their continued water services.  Although these payments were termed 
Avoluntary,@ occupants such 
as Ray seemed to have little choiceCthey could 
Acontribute@ to the water 
fund or have their service terminated.  
Even if the water itself is now provided at no cost to those receiving 
it, as Appellants contend, the service has been provided for compensation.  Thus, because we find that the water 
service provided to Ray, and possibly other occupants of the airport, was for 
compensation, we hold that Appellants do qualify as Aretail public 
utilities.@  Therefore, Section 13.042(e) governs if 
the issue is one that falls within TCEQ=s exclusive 
jurisdiction; that is, if the issue is water or utility rates, operations, or 
services.[30]


BCY Water Supply 
Corp. addressed a 
similar fact situation involving the continuation of water supply and Section 
13.042(e).[31]  BCY was a corporate supplier of water 
that promised to supply water to Residential Investments=  proposed new subdivision.[32]  BCY later informed Residential 
Investments that BCY could not supply the water to the subdivision as initially 
indicated, and Residential Investments sued BCY, alleging that BCY had 
improperly denied water services to Residential Investments.[33]  Subsequently, Residential Investments 
amended its pleadings, deleting its denial of service allegations and adding 
common law claims of negligent misrepresentation and promissory estoppel.[34]  BCY objected to the trial 
court=s jurisdiction 
based on Section 13.042.  The 
appellate court ultimately held that the trial court had jurisdiction over the 
common law causes of action.[35]  However, the appellate court 
specifically stated that its reason for finding that the trial court had 
jurisdiction was because Residential Investments had abandoned its denial of 
service cause of action when it amended its petition.[36]  The court interpreted the statutory 
language of Section 13.042 and denied that the TCEQ had exclusive jurisdirction 
of all claims Aarising 
from@ the 
provision.[37]  The court found that it had to presume 
that because the legislature chose not to include the words Aarising 
from@ in the 
provision, it intended to give the TCEQ jurisdiction over those matters 
directly related to water and utility rates, operations, and services, 
Asuch as was 
initially pleaded by Residential Investments in the instant case, but later 
abandoned.@[38]  Thus, the court signaled that if 
Residential Investments had continued to pursue the issue of whether BCY had 
improperly denied it water service rather than amending its petition to exclude 
it, this issue would have been under the exclusive jurisdiction of the 
TCEQ.

In their motion 
for temporary injunction, Appellees sought an injunction ordering Appellants to 
restore, 
reconnect, and maintain a continued supply of water and water service to 
Appellees= 
airport properties.  The temporary injunction was granted and 
compels these actions.  Thus, we 
hold that the temporary injunction orders actions directly related to water 
service and invades the exclusive jurisdiction of TCEQ under 
Section13.042(e).  Therefore, the 
trial court lacked jurisdiction to order the temporary injunction, and abused 
its discretion by doing so.  Because 
the trial court lacked jurisdiction to order it, the temporary injunction is 
void.  We do not address the trial 
court=s subject matter 
jurisdiction of the causes of action pending below, nor do we reach 
Appellants= other issues.[39]
Because we have 
held that the trial court lacked jurisdiction to issue the temporary injunction 
and that the temporary injunction is therefore void, we vacate the order 
granting the temporary injunction, dissolve the temporary injunction, and remand 
this case for proceedings consistent with this opinion.
 
 
LEE ANN 
DAUPHINOT
JUSTICE
 
PANEL 
B:   LIVINGSTON, DAUPHINOT, and 
HOLMAN, JJ.
DELIVERED:  DECEMBER 8, 2005
 




[1]See Butnaru 
v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002); Mabrey 
v. SandStream, Inc., 124 S.W.3d 302, 309 (Tex. 
App.CFort Worth 2003, no pet.); Gen. Fin. Servs., 
Inc. v. Practice Place, Inc., 897 S.W.2d 516, 519 (Tex. 
App.CFort Worth 1995, no writ).

[2]Mabrey, 124 
S.W.3d at 309; Miller Paper Co. v. Roberts Paper Co., 901 S.W.2d 593, 598 
(Tex. App.CAmarillo 1995, no writ); see also Butnaru, 84 
S.W.3d at 211.

[3]Butnaru, 84 
S.W.3d at 211; Mabrey, 124 S.W.3d at 309.

[4]Mabrey, 124 
S.W.3d at 309.

[5]Id.; Bell v. 
Tex. Workers Comp. Comm=n, 102 S.W.3d 
299, 302 (Tex. App.CAustin 2003, no pet.); Rugen v. Interactive Bus. 
Sys., Inc., 864 S.W.2d 548, 551 (Tex. App.CDallas 1993, no writ); Bertotti v. C.E. Shepherd 
Co., 752 S.W.2d 648, 651 (Tex. App.CHouston [14th Dist.] 1988, no 
writ).

[6]Tex. 
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(4) (Vernon Supp. 
2005).

[7]Id. ' 51.014(a)(8).

[8]Tex. State Bd. of Exam=rs in Optometry v. Carp, 343 S.W.2d 242, 243 (Tex. 
1961).

[9]Subaru of Am., Inc. v. David McDavid 
Nissan, Inc., 84 S.W.3d 212, 220 (Tex. 2002); 
Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 75 (Tex. 2000). 

[10]See Tex. Const. art. V, ' 8; Subaru, 84 
S.W.3d at 220.

[11]See Tex. Gov=t 
Code Ann. 
'' 24.007-.008 (Vernon 
2004).

[12] Subaru, 84 S.W.3d 
at 220.

[13]Id. (citing Key W. Life 
Ins. Co. v. State Bd. of Ins., 350 S.W.2d 839, 848 (Tex. 
1961)).

[14]See Cash Am. 
Int=l, Inc. v. Bennett, 
35 S.W.3d 12, 15 (Tex. 2000).

[15]Subaru, 84 S.W.3d at 
221.

[16]Id.

[17]Bennett, 35 
S.W.3d at 15.

[18]Subaru, 84 S.W.3d at 
221.

[19]Id. at 222; see also El Paso 
Natural Gas Co. v. Minco Oil & Gas, Inc., 8 S.W.3d 309, 312 (Tex. 
1999); Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 
1998).

[20]Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 
1998).

[21]See Phillips v. 
Beaber, 995 S.W.2d 
655, 658 (Tex. 1999).

[22]Id.

[23]Id.

[24]Id.

[25]Tex. 
Water Code Ann. ' 13.042(e) (Vernon 
2000).

[26]Id. ' 13.002(17), (21) (Vernon 
Supp. 2005).

[27]Id. ' 13.001(c) (Vernon 
2000).

[28]Id. ' 13.002(19) (emphasis 
added).

[29]30 Tex. Admin 
Code ' 291.3(30) (2005).

[30]See Tex. 
Water Code Ann. ' 
13.042(e).

[31]BCY Water Supply Corp. v. 
Residential Inv., Inc., 170 
S.W.3d 596, 601 (Tex. App.CTyler 2005, pet. denied); 
Lake Country Estates, Inc. v. Toman, 624 S.W.2d 677, 681 
(Tex. App.CFort Worth 1981, writ 
ref=d 
n.r.e.).

[32]BCY Water Supply 
Corp., 
170 S.W.3d at 599.

[33]Id.

[34]Id.

[35]Id. at 
601.

[36]Id.

[37]Id. at 
600.

[38]Id. at 
601.

[39]See Tex. R. App. P. 47.1.