The CITY OF SAN ANTONIO,
As Owner of the San Antonio
Water System, Appellant,

v.

BSR WATER COMPANY; Sneckner Partners, Ltd.; Debra Sneckner Kennedy; Sherri Martineau Sneckner; William Kendrick Sneckner; Lova Catherine Sneckner Buckner, Appellees.

No. 04–05–00495–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 28, 2005.

---

2. We decline to address State Farm's remaining issues because they are not dispositive to this appeal. TEX.R.APP. P. 47.1.

Daniel McNeel Lane, Jr., Monica J. Rodriguez, Jo Beth Eubanks, Akin Gump Strauss Hauer & Feld L.L.P., San Antonio, for appellant.

Seagal V. Wheatley, Jenkens & Gilchrist, P.C., San Antonio, for appellees.

Sitting: CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an accelerated appeal from the trial court's denial of the City's plea to the jurisdiction. In the underlying suit, BSR Water Company and others (collectively "BSR") sued the City on claims of breach of contract, fraud, fraudulent inducement, and conversion. In this appeal, we determine whether (1) the City is immune from suit on BSR's tort claims, (2) BSR's contract claim is ripe, and (3) the Texas Commission for Environmental Quality ("TCEQ") has either exclusive or primary jurisdiction over BSR's contract claim. We affirm in part and reverse in part.

## BACKGROUND

BSR owns a 442–acre ranch in northwest San Antonio, Texas, and holds a Certificate of Convenience and Necessity ("CCN")[1] from the State that allows it to

---

1. A CCN allows an entity to provide retail water service if it is for the public's convenience and necessity. TEX. WATER CODE ANN. § 13.242(a) (Vernon 2000).

operate a potable water system on the ranch. The San Antonio Water System ("SAWS") is a public utility that provides services in Bexar County, Texas through service areas established by its CCNs. The TCEQ is the state agency that grants CCNs and ensures that all CCN applicants possess the financial, managerial, and technical capability to provide continuous and adequate water utility service. *See* TEX. WATER CODE ANN. §§ 13.241, 13.242 (Vernon 2000).

In 1998, SAWS filed an application with the TCEQ for a CCN covering several thousand acres west of Highway 281 in northern Bexar County. BSR owns 412 acres west of Highway 281. BSR has the CCN to provide retail water service within its 412 acres, although it has never provided such service to any customer. BSR wanted to expand the area covered by its CCN to include 800 acres of neighboring land surrounding its property (the "Expansion Area"). BSR's Expansion Area fell within the land covered by SAWS's application for a CCN. BSR also filed a protest to SAWS's application with the TCEQ because BSR wanted to expand its CCN to cover the Expansion Area. The Bexar County Metropolitan Water District ("Bexar Met") filed a similar protest with TCEQ.

On February 15, 2000, representatives of BSR and SAWS engaged in contract negotiations to resolve their differences, eventually entering into a Water Supply Contract and Service Area Settlement Agreement. Among the obligations assumed by the parties under the agreement are the following: (1) BSR agreed to withdraw its request for a contested hearing on its protest to SAWS's CCN application and agreed to submit a letter supporting SAWS's application for an expansion of its CCN in those areas surrounding BSR's CCN; (2) SAWS agreed to not oppose, and to support any attempt by BSR to expand the area of its CCN provided such expansion is within the limits of the Expansion Area; (3) SAWS agreed not to oppose, and to support, the transfer to BSR of any portion of SAWS's CCN located within the Expansion Area; (4) BSR agreed to sell to SAWS water on a wholesale basis; and (5) BSR granted SAWS the right to produce up to 1,500 acre feet per year of groundwater from wells SAWS agreed to drill on BSR's land. In compliance with the agreement, BSR withdrew its opposition to SAWS's CCN application and submitted a letter to TCEQ supporting SAWS's application.

On September 22, 2000, representatives of Bexar Met and SAWS engaged in contract negotiations to resolve their differences, eventually entering into an Interlocal Operational Agreement. Among the obligations assumed by the parties under the agreement are the following: (1) SAWS agreed to withdraw its application for a CCN covering the Expansion Area, thereby freeing Bexar Met to file an application to include those properties in its application for a CCN; and (2) Bexar Met agreed to withdraw its protest to SAWS's CCN application on the remaining property. SAWS later amended its CCN application to exclude the Expansion Area. BSR contends SAWS did not disclose to it the terms of its agreement with Bexar Met.

On March 27, 2001, SAWS and BSR amended their contract to provide SAWS with additional time in which to drill and construct the wells on BSR's property.

On August 2, 2001, BSR filed a CCN application to amend its own CCN to include the Expansion Area. BSR also asked SAWS to submit a letter to TCEQ supporting its application, which SAWS did.

On January 15, 2002, Bexar Met and neighbors owning land in the Expansion

Area filed protests to BSR's CCN application. On April 1, 2002, Bexar Met filed an application for a CCN, which would cover the Expansion Area. BSR filed a protest.

At some point, BSR engaged in negotiations with Bexar Met to sell water. In July 2003, BSR withdrew its application to amend its CCN to include the Expansion Area.

SAWS eventually completed construction of the wells on BSR's property; however, BSR asserted several complaints. BSR alleged SAWS failed to purchase 1,500 acre feet of water from BSR's land, SAWS has not optimized production on the land, and SAWS's execution of the Interlocal Operational Agreement with Bexar Met and its withdrawal of its application for a CCN over the Expansion Area breached SAWS's obligation to BSR under the Water Supply Contract and Service Area Settlement Agreement. In February 2004, BSR sued SAWS for breach of contract, fraud, fraudulent inducement, and conversion. The City filed a plea to the jurisdiction, asserting the trial court lacked subject-matter jurisdiction over the contract and tort claims. The trial court denied the plea.

### IMMUNITY FROM SUIT

In its first issue, the City argues it is immune from suit on BSR's tort claims[2] based upon the exercise of its governmental functions: the construction, ownership, and operation of a water service system. BSR counters that the City is not immune from suit because its tort claims arise from the City's proprietary operation of a public utility.

■■■ The functions of a municipality fall into one of two categories. *City of Houston v. Southwest Concrete Constr.,*

*Inc.,* 835 S.W.2d 728, 730 (Tex.App.-Houston [14th Dist.] 1992, writ denied); *Crownhill Homes, Inc. v. City of San Antonio,* 433 S.W.2d 448, 455 (Tex.Civ.App.-Corpus Christi 1968, writ ref'd n.r.e.). Governmental functions are those functions that are enjoined on a municipality by law and are given to it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a) (Vernon 2005). A municipality performing a governmental function is afforded sovereign immunity unless immunity has been waived under the Texas Tort Claims Act. *See id.* §§ 101.001–.109.

■■■ Proprietary functions are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality. *See id.* § 101.0215(b). Proprietary functions are not integral to a municipality's function as an arm of the state. *Southwest Concrete Constr.,* 835 S.W.2d at 731. "The sovereign immunity of the state does not protect a municipality from liability for actions taken in a proprietary capacity because such are undertaken for the benefit of private enterprise or the residents of the municipality rather than for the benefit of the general public." *Id.*

Relying on the "arising from" language of Texas Civil Practice and Remedies Code section 101.0215, BSR asserts courts must first determine the specific function from which a plaintiff's damages arise, before determining whether the municipality is immune. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a) ("A municipality is liable ... for damages arising from its governmental functions ...."); § 101.0215(b) ("This chapter does not apply to the liability of a municipality for damages arising

---

**2.** On appeal, the City does not challenge the trial court's denial of its plea to the jurisdiction on the grounds of immunity from suit on BSR's breach of contract claim.

from its proprietary functions....."). BSR argues there must be a nexus between the asserted claims and the alleged governmental function. BSR contends its claims do not arise from SAWS's providing water and sewer services, and instead, its claims arise from SAWS's refusal to maintain its application for a CCN covering the Expansion Area so that BSR could later provide water and sewer service. According to BSR, (1) its fraud claim rests on SAWS's never actually intending to continue its application for a CCN for the Expansion Area, and (2) its conversion claim rests on BSR being deprived of the right to capture the water under its property because SAWS failed to drill wells on the property, which resulted in surrounding landowners capturing the water and selling it to SAWS. Therefore, BSR concludes that because its claims arise from the operation of a public utility, and not the providing of "water and sewer service," the City is not immune from suit.

 A municipality does not enjoy immunity from suit for the performance of its proprietary functions, such as "the operation and maintenance of a public utility." Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(b)(1). There is no dispute that SAWS is a public utility. The provision of water services, waterworks, and irrigation were considered proprietary functions under the common law. *City of Texarkana v. Cities of New Boston,* 141 S.W.3d 778, 783 (Tex.App.-Texarkana 2004, no pet.); *City of Dallas v. Reata Constr. Corp.,* 83 S.W.3d 392, 397 (Tex.App.-Dallas 2002). However, the Legislature did not adopt the same classifications the common law employed when it classified municipal functions in section 101.0215. *Reata Constr. Corp.,* 83 S.W.3d at 397. And, plaintiffs may not "split various aspects of [a municipality's] operation into discrete functions and recharacterize certain of

those functions as proprietary." *See City of San Antonio v. Butler,* 131 S.W.3d 170, 178 (Tex.App.-San Antonio 2004, pet. filed Apr. 15, 2004). Although the operation of a public utility is a proprietary function, a municipality's proprietary functions do not include those activities listed as governmental in section 101.0215(a). Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(c); *Butler,* 131 S.W.3d at 177; *see Southwest Concrete Constr.,* 835 S.W.2d at 731 (referencing section 101.0215(c) and noting "the legislature included a *caveat* in addition to the language which indicated that the list of proprietary functions was not exclusive."). Among the governmental functions listed in section 101.0215(a) for which a municipality enjoys immunity from suit is the provision of "water and sewer service." Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(32). Furthermore, "all activities associated with the operation of one of the government functions listed in section 101.0215(a) are governmental and cannot be considered proprietary, regardless of the [municipality's] motive for engaging in the activity." *See Butler,* 131 S.W.3d at 177; *see also Cities of New Boston,* 141 S.W.3d at 784.

BSR contends the City is not required to operate a utility, the City assumed this activity as a matter of discretion, and the City's competitive activity in negotiating contracts and obtaining property for its own use does not benefit the public at large, and instead, benefits only SAWS and the citizens of San Antonio. For these reasons, BSR contends SAWS is operating a public utility for profit, which is a proprietary function. While it may be true that the City profits from the contracts SAWS enters into, if SAWS's actions are encompassed within the governmental function of providing "water and sewer service," we have no discretion to declare the actions proprietary, regardless of the City's motives. *Texas River Barges v.*

*City of San Antonio,* 21 S.W.3d 347, 357 (Tex.App.-San Antonio 2000, pet. denied); *see also Butler,* 131 S.W.3d at 178 (holding that "the existence of a profit motive [does not reclassify] one aspect of a government function into proprietary conduct.").

■ Here, BSR's claims arise from SAWS's decisions regarding the drilling of wells, the purchase of water, and an application for a CCN over the Expansion Area. These decisions cannot be distinguished from the City's governmental function to provide "water and sewer service." *See Butler,* 131 S.W.3d at 178; *Texas River Barges,* 21 S.W.3d at 356. "The City has discretion to perform or not perform many activities in connection with its government functions." *Butler,* 131 S.W.3d at 178. That discretion does not reclassify one aspect of a government function into a proprietary function. *Id.* Because SAWS's actions were encompassed within its governmental function of providing "water and sewer service," the City is entitled to immunity. Therefore, the trial court erred in denying the City's plea to the jurisdiction based on its entitlement to immunity on BSR's tort claims.

## WAIVER OF IMMUNITY

BSR asserts that, if immunity applies to SAWS's conduct, immunity was waived by the City's Charter and by the Local Government Code. BSR relies on this court's opinion in *Alamo Community College District v. Obayashi Corp.,* 980 S.W.2d 745, 749 (Tex.App.-San Antonio 1998, pet. denied), *abrogated on other grounds by Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591 (Tex.2001). In *Obayashi,* a panel of this court held that an Education Code provision that school district trustees may sue and be sued was an unambiguous waiver of immunity from suit for all independent school districts and junior colleges. However, in *Butler,* a panel of this court held that, "[e]ven if it could be argued that the 'sue and be sued' language of the Local Government Code was originally intended to waive a city's immunity from suit on all types of claims, that general waiver of immunity was severely limited in the tort context by the passage of the TTCA." *Butler,* 131 S.W.3d at 176–77 (citations omitted). With regard to whether immunity was waived under the City Charter, the *Butler* court held that "the language of the City Charter should not be read to waive the City's immunity from suit with respect to tort claims." *Id.* 176–77 (citations omitted). Therefore, under *Butler,* we hold that immunity is not waived by the City's Charter or the Local Government Code.

## RIPENESS

■ In its second issue, the City contends the trial court erred in denying its plea to the jurisdiction because BSR's contract and tort claims are not ripe. We have already determined that the City is immune from suit on BSR's tort claims; therefore, we consider only whether BSR's contract claim is justiciable. For a claim to be justiciable, the claim must be ripe, and the concept of ripeness emphasizes the need for a concrete injury and focuses on when an action may be brought. *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 851 (Tex.2000). Under the ripeness doctrine, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed and show that an injury has or is likely to occur. *Id.* at 851–52. A case is not ripe if determining whether a plaintiff has a concrete injury depends on events that have not come to pass or that are based on hypothetical or contingent facts. *Id.* at 852.

■ The City asserts BSR does not have a concrete injury because BSR's claims are based on a future event: wheth-

er the TCEQ would grant or deny BSR a CCN in the Expansion Area. On the other hand, BSR asserts SAWS's actions denied BSR "any expansion rights and the valuable right to receive payments of several millions of dollars from SAWS or other water purchasers for water to be purchased in [BSR's] new agreed expanded area." BSR also asserts that SAWS has directly caused it "to lose extremely valuable rights to sell its own water to other land developers." Further, BSR contends it lost the benefit to expand its water area because it "simply does not have the ability to compete with a huge utility like Bexar Met for a certificate to serve the same area." BSR claims to have suffered injury regardless of the TCEQ's future decision. Taking the facts stated in BSR's petition as true, if SAWS breached its agreement with BSR, then BSR suffered an injury by losing its expansion rights and rights to sell its water to other developers. Therefore, it is not determinative that the TCEQ has not issued a final ruling regarding the CCN application and we hold that BSR's breach of contract claim is ripe.

### TCEQ'S JURISDICTION

In its third issue, the City asserts the trial court lacks subject-matter jurisdiction because the TCEQ has exclusive jurisdiction over the underlying CCN dispute. Alternatively, the City asserts the TCEQ has primary jurisdiction. The City insists the Legislature gave the TCEQ exclusive jurisdiction to decide the issues raised in this case and that BSR must exhaust all administrative remedies available to it before seeking judicial review. The City contends that because BSR has not exhausted all administrative remedies available, the trial court does not have subject-matter jurisdiction to hear this case.

### A. Exclusive Jurisdiction

 Courts of general jurisdiction presumably have subject-matter jurisdic-

tion unless a contrary showing is made. *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002). There is no presumption that administrative agencies are authorized to resolve disputes. *Id.* Instead, an agency may exercise only those powers the law, in clear and express statutory language, confers upon it. *Id.* "Courts will not divine by implication additional authority to agencies, nor may agencies create for themselves any excess powers." *BCY Water Supply Corp. v. Residential Investments, Inc.*, 170 S.W.3d 596, 600 (Tex.App.-Tyler 2005, pet. denied).

 Under the exclusive jurisdiction doctrine, the Legislature grants an administrative agency the sole authority to make an initial determination in a dispute. *See Cash Am. Int'l, Inc. v. Bennett,* 35 S.W.3d 12, 15 (Tex.2000). An agency has exclusive jurisdiction when a pervasive regulatory scheme indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed. *Subaru,* 84 S.W.3d at 221. Whether an agency has exclusive jurisdiction depends on statutory interpretation. *Id.* Typically, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Bennett,* 35 S.W.3d at 15. Until then, the trial court lacks subject-matter jurisdiction and must dismiss without prejudice the claims within the agency's exclusive jurisdiction. *Subaru,* 84 S.W.3d at 221.

 Determining if an agency has exclusive jurisdiction requires statutory construction and raises jurisdictional issues. *Id.* at 222. Thus, whether an agency has exclusive jurisdiction is a question of law we review de novo. *Id.* Our objective

when construing a statute is to determine and give effect to the Legislature's intent. *See Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex.1999). To ascertain that intent, we look first to the statute's plain language and give words their ordinary meaning. *Id.* We must view the statute's terms in context and give them full effect. *Id.* Further, we presume that the Legislature acted with knowledge of the common law and court decisions. *Id.*

The Texas Water Code was adopted to "protect the public interest inherent in the rates and services of retail public utilities." *Id.* § 13.001(a). The purpose of Water Code chapter 13 ("Water Rates and Services") is "to establish a comprehensive regulatory system that is adequate to the task of regulating retail public utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the retail public utilities." TEX. WATER CODE ANN. § 13.001(c). The TCEQ has "exclusive original jurisdiction *over water and sewer utility rates, operations, and services* not within the incorporated limits of a municipality exercising exclusive original jurisdiction over those rates, operations, and services *as provided in this chapter.*" *Id.* § 13.042(e) (emphasis added). Thus, under section 13.042(e), the TCEQ's exclusive jurisdiction is limited to those "rates, operations, and services" governed by chapter 13 of the Water Code. *See BCY Water Supply*, 170 S.W.3d at 601 (Legislature "intended to limit the TCEQ's jurisdiction specifically to matters directly related to water and sewer utility rates, operations, and services...").

To accomplish the Water Code's purpose, retail water or sewer utility service may not be rendered, directly or indirectly to the public, by a utility or a water supply or sewer service corporation unless the utility or service corporation first obtains from the TCEQ "a certificate that the present or future public convenience and necessity will require that installation, operation, or extension...." *Id.* § 13.242(a). Thus, the TCEQ is responsible for granting a CCN, *id.* § 13.246(b), (c); and it allows any party affected by a CCN application to intervene at a hearing on the application. *See id.* § 13.246(a). However, here, BSR asserts a common law breach of contract claim against SAWS. Chapter 13 does not specify a procedure for resolving such disputes. Also, although the TCEQ has the authority to levy penalties, it does not have the authority to award damages.

The Code's failure to establish any claims-resolution process through which the TCEQ may resolve contract claims between a utility and a private party, as well as the TCEQ's inability to award monetary damages, supports our conclusion that the Water Code does not give the TCEQ exclusive jurisdiction to resolve BSR's contract claim. *See Subaru*, 84 S.W.3d at 226 (Motor Vehicle Board's exclusive jurisdiction applied to dealer's Code-based DTPA and bad-faith claims because Texas Motor Vehicle Commission Code provides a hybrid claims-resolution process); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 206–07 (Tex.2002) (Motor Vehicle Commission Code's failure to establish procedure through which Board could resolve claim that a manufacturer unlawfully refused to accept a dealer's transfer request, coupled with Board's inability to award monetary damages, demonstrated that the Board did not have exclusive jurisdiction to resolve tortious interference and declaratory judgment claims). Therefore, the trial court had subject-matter jurisdiction over BSR's contract claim. *See BCY Water Supply*, 170 S.W.3d at 601 (holding that common law claims for negligent misrepresentation and promissory es-

toppel did not fall within TCEQ's exclusive jurisdiction); *see also City of Donna v. Victoria Palms Resort, Inc.*, No. 13–03–375–CV, 2005 WL 1831593, *5 (Tex.App.-Corpus Christi Aug.04, 2005, pet. filed) (holding that TCEQ does not have jurisdiction over claims for deceptive trade practices and breach of contract).

## B. Primary Jurisdiction[3]

Primary jurisdiction is a judicially created doctrine in which a court may dismiss or stay an action pending resolution of some portion of the case by an administrative agency. *Harris County Mun. Util. Dist. v. Mitchell*, 915 S.W.2d 859, 863–64 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Under the doctrine of primary jurisdiction, a matter delegated by statute to an administrative agency for initial action must be determined by that agency before the matter may be reviewed by a court. *Id.* at 864; *see also Subaru*, 84 S.W.3d at 221.

"[P]rimary jurisdiction is prudential whereas exclusive jurisdiction is jurisdictional." *Subaru*, 84 S.W.3d at 220. Thus, to the extent the TCEQ has primary jurisdiction over BSR's claims, the trial court did not lack subject-matter jurisdiction. If an agency has primary jurisdiction, rather than dismiss the case, a trial court should abate the lawsuit and suspend final adjudication of the claims until after the agency has an opportunity to act on the matter. *Id.* at 221.

A trial court should allow an administrative agency to initially decide an issue when: (1) the agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from the agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations. *Subaru*, 84 S.W.3d at 221. Here, the merits of the pending CCN application are not at issue. Instead, the rights and obligations of SAWS and BSR under the Water Supply Contract and Service Area Settlement Agreement are at issue. We, therefore, hold the TCEQ does not have primary jurisdiction over BSR's contract claim.

## CONCLUSION

We reverse the trial court's order to the extent it denies the City's plea to the jurisdiction on BSR's tort claims and we render judgment dismissing BSR's tort claims against the City for lack of subject-matter jurisdiction. We affirm the trial court's order in all other respects, and remand for further proceedings consistent with this opinion.

---

**3.** BSR asserts this court does not have jurisdiction to address the City's primary jurisdiction claim because the doctrine of primary jurisdiction does not deprive a trial court of subject-matter jurisdiction. According to BSR, because this is an interlocutory appeal from the trial court's denial of a plea to the jurisdiction, our review is limited to only jurisdictional arguments. We disagree, and conclude this court has jurisdiction to consider whether the TCEQ has primary jurisdiction over BSR's contract claim. *See Butnaru*, 84 S.W.3d at 208 (Supreme Court considered both exclusive and primary jurisdiction arguments); *Cash America International v. Bennett*, 35 S.W.3d 12 (Tex.2000) (same).